In re **TELESPHERE COMMUNICATIONS, INC.; Telesphere Network, Inc., a/k/a TNI; and Telesphere Limited Inc., f/k/a National Telephone Services, Inc. and American Operator Services, Inc., Debtors.**

Bankruptcy Nos. 91 B 17581, 91 B 19188 and 91 B 19189.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 15, 1992.

---

Robert M. Fishman, Robert L. Baker, Leslie S. Zalis, Ross & Hardies, Chicago, IL, for debtors.

Kathy McAlice, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, PA, for Travelers Ins. Co.

Mitchell E. Jones, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Travelers Ins.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

These administratively consolidated cases have come before the court on the motion of a creditor, Travelers Insurance Company, to compel one of the debtors, Telesphere Communications, Inc. ("TCI"), to pay $22,952.49 in postpetition rent. The motion raises the question of the interpretation of Section 365(d)(3) of the Bankruptcy Code (Title 11 U.S.C., the "Code"), which provides for timely performance of certain lease obligations of the debtor until the lease is assumed or rejected.[1] Travelers argues that this section accords lessors a right to immediate lease payments. In response, the debtor argues (1) that Travelers' claim for postpetition rent is an administrative claim, pursuant to Section 503(b)(1) of the Code, which must be paid pro rata with all other administrative claims, pursuant to the priority scheme of Section 507(a)(1),[2] and (2) that if an estate

may have insufficient funds to pay all administrative claims, no claims should be paid until the extent of available funds is determined. The court has considered the arguments of the parties presented at the hearing on this matter, as well as the briefs submitted by counsel. For the reasons discussed below, Travelers' motion to compel payment is granted.

### Jurisdiction

This court has jurisdiction over the pending motion pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), and Rule 2.33 of the General Rules of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### Factual Background

Before these cases were instituted, TCI leased commercial space in Philadelphia from Travelers. The lease was in effect in August 1991 when certain creditors filed an involuntary petition against TCI under Chapter 7 of the Bankruptcy Code. Shortly thereafter, on September 11, 1991, TCI converted the case by filing a petition for relief under Chapter 11. Simultaneous with TCI's conversion, its two subsidiaries—Telesphere Network, Inc., a/k/a TNI, and Telesphere Limited, Inc., f/k/a National Telephone Services, Inc. and American Operator Services, Inc.—also filed Chapter 11 petitions. Pursuant to Section 301 of the Code, an order for relief was entered in the three cases effective September 11. This court later consolidated the cases for

---

1. Section 365, "Executory Contracts and Unexpired Leases," provides in relevant part:

   (d)(3) The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief but the time for performance shall not be extended beyond such 60–day period.... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

2. Section 503, "Allowance of Administrative Expenses," provides in relevant part:

   (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
   (1)(A) the actual, necessary costs and expenses of preserving the estate....
   Section 507, "Priorities," provides in relevant part:
   (a) The following expenses and claims have priority in the following order:
   (1) First, administrative expenses allowed under section 503(b) of this title....

administrative purposes, and the three debtors are jointly known as "Telesphere."

On November 1, 1991, Ronald Haan Ventures, Inc. ("Haan Ventures") and Telesphere entered into an agreement to purchase substantially all of Telesphere's assets, following a sale in open court. The sale effectively transformed the Telesphere cases from reorganizations into liquidations under Chapter 11. The purchase contract allowed Haan Ventures up to ninety days to direct Telesphere to seek to assume unexpired leases and assign them to Haan Ventures, or to seek to reject them. The court later granted a motion by Telesphere (1) to extend the time in which to assume or reject a number of leases, including Travelers', until February 4, 1992; and (2) to require, pursuant to the purchase contract, that Haan Ventures pay all administrative rents from November 1 until the court approved assumption or rejection of the leases. In the case of its lease with Travelers, TCI continued to use the premises until February 4, 1992, when the court approved rejection of the lease. Travelers has been paid all rent due from November 1, 1991, through February 4, 1992, leaving only a claim for rent from September 11 to October 31, 1991.[3]

Telesphere, currently implementing its liquidation, resists immediate payment of this rent, either in whole or in part, on the ground that the estates may be unable to pay all administrative claimants. This claim of administrative insolvency appears to arise from genuine concerns. These are very large cases—the number of unsecured creditors exceeds 24,000—and hundreds of administrative claims have already been submitted for payment, including other claims for payment of postpetition rent under Section 365(d). Many of the professionals have yet to file their fee applications. Furthermore, the principal secured creditors in the case have claimed blanket liens on all assets of the estates, subject to certain "carve outs" for professional fees and expenses. It may well be, then, that administrative claims allowed under Section 503(b) and accorded the first priority of payment under Section 507(a)(1) will not be paid in full.

## Legal Conclusions

■ This case presents a narrow legal issue: whether Section 365(d)(3), by mandating the trustee's "timely performance" of the debtor's post-petition lease obligations, gives the lessor a right to payment from the estate independent of the rights of administrative claimants under Section 503(b), regardless of administrative solvency. A majority of the decisions construing Section 365(d)(3) in the context of potential administrative insolvency support Telesphere's resistance to payment. They hold that rental payments made pursuant to Section 365(d)(3) are payments of administrative expenses, and, since Congress did not expressly provide for any superpriority, these rental payments should be made only to the extent that other administrative claims are paid.[4] However, at least two

---

3. Travelers' claim for rent from August 19 to September 10, 1991, the involuntary "gap" period, would arise under Section 502(f), and if allowed, would receive Section 507(a)(2) priority behind all allowed administrative expenses under Section 507(a)(1). Payment for this period is not in dispute.

4. The majority decisions usually contain four holdings:
(1) claims for payment of rent under Section 365(d)(3) are administrative expense claims under Sections 503(b)(1) and 507(a)(1);
(2) Section 365(d)(3) results in automatic allowance of the rent claims in the amount provided in the lease;
(3) Section 365(d)(3) does not accord these rent claims any priority over other claims arising under Section 507(a)(1); and

(4) payment of these rent claims should not be ordered if the trustee or debtor in possession can demonstrate a likelihood of insufficient funds to pay all other administrative expense claims.
*In re Granada, Inc.*, 88 B.R. 369, 375 (Bankr. D.Utah 1988) ("[U]npaid Section 365(d)(3) expenses do not enjoy a superpriority status over other Section 507(a)(1) administrative claims. When immediate payment of those expenses is properly sought, full payment must be made absent a showing by the trustee of 'substantial doubt' that there will ultimately be sufficient funds available to pay all administrative expenses."); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D.Pa. 1987); *In re Cardinal Industries, Inc.*, 109 B.R. 738, 740, 742 (Bankr.S.D.Ohio 1989); *In re Four Star Pizza*, 135 B.R. 498, 500 (Bankr.W.D.Pa.

courts have concluded that although rent payable under Section 365(d)(3) is an administrative expense, the statute requires payment without consideration of the estate's ability to pay other administrative claims.[5]

The majority interpretation of Section 365(d)(3) has two difficulties. First, it produces a strained reading of the statutory language. That language provides that a trustee (and pursuant to Section 1107(a), a debtor in possession) "shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." Since a principal obligation of the lessee is payment of rent, this language plainly directs a debtor in possession to make rental payments when they are due.[6] By engrafting an exception to this language—"unless it appears that there may be insufficient funds to pay all administrative claimants"—the majority interpretation dilutes this plain meaning.[7]

The Supreme Court has, in several recent decisions, directed that the plain language of the Bankruptcy Code should not be departed from without substantial justification. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters.' [citation omitted]"); *Union Bank v. Wolas*, — U.S. —, —, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); *Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (when there is "clarity of the statutory text," the party urging an interpretation contrary to the plain meaning of the statute bears an "exceptionally heavy" burden of persuasion).

1992); *In re Spiess,* 145 B.R. 597, 607–08 (Bankr. N.D.Ill.1992).

Other majority decisions vary slightly from these holdings. *In re United West, Inc.,* 87 B.R. 138, 141 (Bankr.D.Nev.1988), does not specify that the trustee has the burden of demonstrating a likely inability to pay all administrative claimants. *In re Orvco, Inc.,* 95 B.R. 724, 727–28 (9th Cir. BAP 1989), like *United West,* does not assign this burden of proof, and, furthermore, does not read Section 365(d)(3) to provide automatically for an allowed claim in the full amount of rent due under the lease. *In re Orient River Investments, Inc.,* 112 B.R. 126, 134 (Bankr.E.D.Pa. 1990), departs from the other majority decisions in requiring the lessor to prove that the debtor will be likely to pay all administrative claims before payment of rent under Section 365(b)(3) would be allowed.

5. *In re Rare Coin Galleries of America, Inc.,* 72 B.R. 415, 416 (D.Mass.1987) (ordering immediate payment of rent pursuant to Section 365(d)(3) even though the estate was administratively insolvent, because the "command of § 365(d)(3) that the trustee shall 'timely' perform the rent obligations ... gives a special administrative claim priority to post-petition rent due under a non-residential lease."); *In re Bio–Med Laboratories,* 131 B.R. 72, 74 (Bankr. N.D.Ohio 1991) (extending the rule of *Rare Coin Galleries* to cover rent accrued during a holdover period following rejection of a lease).

6. A number of decisions that do not involve issues of administrative insolvency have noted the clear language of Section 365(d)(3). *See, e.g., In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879, 883 (Bankr.E.D.N.Y.1986):

The command of Section 365(d)(3) is clear and unambiguous. It means exactly what it says. We decline the Debtor's invitation to disfigure with the patina of judge made law the clean surface of a statute. The Debtor may not like what Section 365(d)(3) says, but neither the Debtor nor this Court are empowered to alter its plain meaning. Accordingly, the Debtor is obligated to pay the base monthly rental reserved under the ... lease for the post-petition period until such lease is assumed or rejected.

*Accord In re Gillis,* 92 B.R. 461, 465 (Bankr.D.Hawaii 1988).

7. The conflict between the majority interpretation of Section 365(d)(3) and its actual language is perhaps most clear in situations of *voluntary* payments of rent. Even with a potentially administratively insolvent estate, the trustee (or debtor in possession) may decide to make timely payments of rent for nonresidential property, prior to assumption or rejection of the lease. In this situation, the majority interpretation would presumably find that the trustee violated the Code for doing what the actual language of Section 365(d)(3) appears to require.

The interpretation urged by the majority of courts addressing Section 365(d)(3) is not supported by any showing that Congress intended rental payments to be withheld in cases of potential administrative insolvency. To the contrary, the legislative history reflects congressional concern that lessors of nonresidential real property, in contrast to other creditors, had frequently been forced to extend credit to an estate during the time given for assumption or rejection of the lease.[8] Because such a lessor, unlike utilities,[9] trade creditors, or post-petition employees, cannot utilize the self-help remedy of terminating their relationship with the debtor if prompt payment is not assured, the lessor becomes, in effect, an "involuntary extender of unsecured credit." *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 n. 2 (Bankr.E.D.Pa.1987) (emphasis in original). Congress responded to this situation with Section 365(d)(3), adding it to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (1984), to "lessen these problems by requiring the trustee to perform all the obligations of the debtor ... at the time required in the lease ... insur[ing] that debtor-tenants pay their rent ... on time...." 130 Cong.Rec. S8894–95 (daily ed. June 29, 1884) (statement of Sen. Hatch) *reprinted in* App. 4 Collier on Bankruptcy, at XX–70—XX–71 (Lawrence P. King et al. eds., 15th ed. 1992).[10] Nothing in this history reflects any purpose to limit the circumstances under which rent should be paid during the period prior to assumption or rejection. Indeed, to withhold payment when the debtor may be administratively insolvent would actually reverse legislative intent, because it would require involuntary extensions of credit by lessors in the very circumstances where the debtors are least likely to honor their lease obligations.

The second difficulty with the majority decisions is their assumption that payments made under Section 365(d)(3) are payments of administrative expenses under Section 503(b)(1). This assumption is a linchpin of the decisions: they reason that if Section 365(d)(3) payments satisfy administrative expenses, then they must be paid pro rata with other Section 503(b) expenses—pursuant to the priority scheme of Section 507(a)—because Congress did not expressly provide for any superpriority.[11] Similarly, some of these decisions note that if one

**8.** See 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch) *reprinted in* App. 4 Collier on Bankruptcy, at XX–70—XX–71 (Lawrence P. King et al. eds., 15th ed. 1992):

> A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

**9.** Section 366(b) of the Code permits a utility to "alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such a date."

**10.** For an analysis of other 1984 BAFJA amendments to Section 365, *see In re By–Rite Distributing, Inc.*, 47 B.R. 660, 663–666 (Bankr.D.Utah), *rev'd on other grounds*, 55 B.R. 740 (D.Utah 1985).

**11.** *See, e.g., In re Cardinal Industries, Inc.*, 109 B.R. 738, 742 (Bankr.S.D.Ohio 1989):

> This Court ... is persuaded by those courts which have adopted the rationale that "had Congress intended to create a super-priority for sub-section 365(d)(3), it would have done so by express statutory language." *In re The Tandem Group, Inc.*, 61 B.R. 738, 742 (Bankr. C.D.Cal.1986)....
> This holding is buttressed by a review of the several sections in the Bankruptcy Code which expressly grant claimants a priority higher than other first priority administrative claimants.... None of these sections or any other provisions mandate similar treatment for unpaid post-petition rental obligations under unexpired leases of real property, and this Court is unwilling to graft such a gloss onto the statute.

administrative expense is paid before the others, as with interim fee awards under Section 331, the earlier paid claim is still entitled only to a pro rata share of the assets of the estate, and hence may be subject to disgorgement if funds are not available to pay all administrative claims in full.[12] However, this discussion of the need for pro rata payment is misplaced, because Section 365(d)(3) payments are not payments of administrative expenses pursuant to Section 503(b)(1).

Section 503(b)(1)(A) describes "administrative expenses" as including "the actual, necessary costs and expenses of preserving the estate." The rental payments involved in the present case fit within this description. However, Section 503 does not set forth the exclusive procedure for paying such expenses. The Bankruptcy Code contains two distinct procedures for the payment of administrative expenses. One of these procedures—the one that involves Section 503(b)(1)—is supervised by the court, and requires application, notice and hearing.[13] The court supervised procedure requires pro rata payment of administrative claims, pursuant to Section 726(b), unless the claim involved is given an express superpriority.

The other procedure for payment of administrative expenses does not involve Section 503(b)(1) or any court supervision. Section 1108 of the Code authorizes the trustee (and hence the debtor in possession under Section 1107) to operate the business of a Chapter 11 debtor unless otherwise ordered by the court. Section 363(c)(1) allows a trustee or debtor in possession, authorized to operate the debtor's business, to "use property of the estate in the ordinary course of business without notice or a hearing." Thus, a trustee or debtor in possession may expend unencumbered cash (property of the estate), in the ordinary course of the debtor's business, to pay providers of goods and services to the estate. This alternative to court supervised payment of administrative expenses may be referred to as "operational payment." *See United States ex. rel. Harrison v. Estate of Deutscher (In re H & S Transportation Co.),* 115 B.R. 592, 600 (M.D.Tenn.1990) (distinguishing professional activities involved in the administration of the estate from activities involved in its operation).

█ In contrast to payments made pursuant to the court supervised procedure, there is no requirement that operational payments be made pro rata with other administrative expenses; operational payments are final. This point was made emphatically in *In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255, 257 (Bankr.N.D.Ohio 1989):

If delays for court approval would deal a staggering blow to debtors-in-possession, then the possibility that [operational payments] could later be subject to a prorata reduction would be the knockout

---

**12.** *See, e.g., In re United West, Inc.,* 87 B.R. 138, 141 (Bankr.D.Nev.1988), citing *In re Barron,* 73 B.R. 812, 815 (Bankr.S.D.Cal.1987) ("All interim payments ... are subject to surcharge in the event that there are insufficient funds to ensure ... pro rata payment to all administrative claimants.").

**13.** This court-supervised payment procedure can be summarized as follows:
    1. The entity with a claim for an administrative expense files a request with the court under Section 503(a) or (for claims for professional compensation and expense reimbursement) Section 330(a) or Section 331.
    2. The court holds a hearing on the request for payment, under Sections 503(b), 330(a), or 331.
    3. The court allows whatever portion of the request it finds appropriate under each of the provisions.

4. The allowed administrative expense is given a priority, either under Section 507(a)(1) or one of the express superpriority provisions, such as Section 364(c)(1).
5. Payment of the allowed expense is made in one of several ways:
    a. In a Chapter 7, as part of the distribution of the estate, pursuant to Section 726(a)(1);
    b. In Chapters 11, 12, and 13, under a plan that must provide cash payments in the allowed amount of the claim, pursuant to Sections 1129(a)(9)(A), 1222(a)(2), or 1322(a)(2) unless the claimant otherwise agrees; or
    c. For professional compensation and reimbursement, under an interim award from the court, pursuant to Section 331.

punch. Businesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies if each of these payments were subject to refund at a later date if the business eventually converts to liquidation bankruptcy. Practical necessities require that administrative expenses resulting from the ordinary course of business be paid immediately and not be subject to any pro-rata reductions.

Although it appears that no other decision to date has addressed the question,[14] vendors who receive payments from the trustee or debtor in possession, for value in the ordinary course of business under Section 363(c)(1), need not fear that the money they receive is subject to disgorgement. *Cf.* Uniform Commercial Code § 9–306, Comment 2(c) (cash payments by a debtor are not subject to a security interest when transferred in the ordinary course of the debtor's business).[15] Thus, operational payments, by their nature, enjoy a de facto priority over other administrative expenses, without any express provision for superpriority.

Given this structure of the Code, the language of Section 365(d)(3) should be read as requiring that rental payments be made according to the procedure for operational payments under Section 363(c)(1).[16]

There is nothing in the language of Section 365(d)(3) suggesting that it involves any of the procedures for court supervised payment. To the contrary, Section 365(d)(3) provides that its terms apply "notwithstanding Section 503(b)(1)"—the section providing a right to court supervised payment—and it requires the trustee or debtor in possession to act without application and without court review. Consequently, and contrary to the reasoning of the majority decisions, there would have been no reason for Congress to have provided any express grant of superpriority for Section 365(d)(3) rent payments—such a "superpriority" is implicit in the direction that the debtor make the payments without court involvement.[17] The absence of an express grant of superpriority cannot, then, be a basis for disregarding the plain language of Section 365(d)(3).

Pursuant to the plain language of Section 365(d)(3), the trustee or debtor in possession has a duty, prior to assumption or rejection of a lease of nonresidential real property, to make timely payment of the full rent due, from any available funds (subject to Section 363(c)(2) of the Code), regardless of the administrative solvency of the estate. No specific remedy is provided by the Code for violation of this duty. However, Section 105(a) of the Code provides authorization to the courts to "issue

**14.** *See In re Pacific Forest Industries, Inc.,* 95 B.R. 740, 743 (Bankr.C.D.Cal.1989): "There are no reported opinions concerning immediate payment of business expenses, but *Collier* states,

> While the courts deal gingerly with the payment of professionals, there is a virtually unstated assumption that 'ordinary course of business' administrative expenses (such as current post petition wages and trade debt) will be paid when due. The courts have not dealt with the question of whether these funds must be refunded if, later, there remains insufficient money for other administrative expenses. 3 *Collier on Bankruptcy* 15th ed. ¶ 503.01."

**15.** Indeed, it is partly because operational payments are final that Section 363(c)(2) of the Code imposes limits on the use of cash collateral, protecting secured creditors from the loss of their collateral through its expenditure in the ordinary course of the debtor's business. *See In re Williams,* 61 B.R. 567, 575 (Bankr.N.D.Tex. 1986) ("The drafters of the Bankruptcy Code

recognized that, due to the unique nature of cash collateral, specific protections should apply to prevent its dissipation. Otherwise, the Court and any entity with an interest therein could be left with a *fait accompli*....").

**16.** Indeed, insofar as rent is an expense incurred in the ordinary course of the debtor's business, the debtor in possession could make voluntary operational payments of that rent, pursuant to Section 363(c)(1), wholly apart from the mandate of Section 365(d)(3).

**17.** In *In re GF Corp.,* 115 B.R. 579, 584 (Bankr. N.D.Ohio), *as modified,* 120 B.R. 421 (Bankr. N.D.Ohio 1990), the court reached a similar result in interpreting Section 1114(e)(1) of the Code, which requires a Chapter 11 trustee to "timely pay" postpetition employee retirement benefits: "If retiree benefits are to be paid immediately, these payments are not in the nature of administrative expenses, as their immediate payment would, in effect, grant to them a superpriority."

**532**

any order, process, or judgment necessary or appropriate" to carry out the provisions of the Code. This provision allows the court to fashion an appropriate remedy where the Code is silent. *In re McNeely*, 82 B.R. 628, 633 (Bankr.S.D.Ga.1987) (discussing court created remedies for violation of the antidiscrimination provisions of Section 525(b)). The most appropriate remedy in the present case would place Travelers in the position it would have occupied if the debtor had complied with the requirements of Section 365(d)(3). Hence, as requested by Travelers, the court will order the debtor in possession to pay immediately the rent that it was obligated to pay to Travelers during the period September 11 to October 31, 1991. Should the debtor in possession lack funds sufficient to comply with this order, the court will consider a request that enforcement be stayed.

### CONCLUSION

The motion of Travelers Insurance is granted. A separate order will be entered in accordance with this opinion.

### ORDER

This cause coming on for hearing on the motion of Travelers Insurance Company to compel Telesphere Communications, Inc., to make immediate full payment of $22,952.49 in postpetition rent, the court having heard the arguments of the parties at the hearing held on this matter, and having reviewed the briefs submitted by counsel for the parties,

IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum of Decision, that the motion of Travelers Insurance for immediate payment of $22,952.49 in postpetition rent pursuant to Section 365(d)(3) of the Bankruptcy Code is granted.