**In re LEISURE TIME SPORTS, INC.,
a California corporation, Debtor.**

**Bankruptcy No. 92–13331–H11.**

United States Bankruptcy Court,
S.D. California.

Nov. 22, 1995.

Richard A. Kramer, Steefel, Levitt & Weiss, San Francisco, CA, for Creditor (Citicorp).

Michael E. Busch, Page, Polin, Busch & Boatwright, San Diego, CA, for Debtor.

Gary B. Rudolph, Sparber, Ferguson, Naumann, Ponder & Ryan, San Diego, CA, for Trustee.

Ross M. Pyle, Pyle Sims Duncan & Stevenson, San Diego, CA, for DP Partnership.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

The Trustee and Debtor move for an order requiring disgorgement of § 365(d)(3) rents received by two commercial lessors from an administratively insolvent estate.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### FACTS

On November 10, 1992, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. At that time, the Debtor operated several bowling centers in San Diego County. The Debtor operated one of the bowling centers under a lease executed by DP Partnership (hereinafter "DP") and operated another under a lease executed by Citicorp.

DP has been paid in full on its administrative claim in the estate. DP received $296,030.00 in aggregate post-petition payments. Of this aggregate amount, $88,251.32 was for rent and charges payable after May 25, 1993, and was expressly not subject to disgorgement under a stipulation regarding rejection of the lease between Debtor and DP. Under the stipulation, the Trustee and Debtor were authorized to remain in possession as a monthly periodic tenant and all rents paid by the Trustee subsequent to rejection were not to be subject to disgorgement.

Citicorp has also been paid in full on its administrative claim in the estate. Citicorp received $232,904.60 in aggregate post-petition payments.

On August 17, 1995, the Trustee and Debtor moved for an order requiring disgorgement of the § 365(d)(3) rents received by DP and Citicorp. The Trustee and Debtor move on the grounds that under Bankruptcy Code § 503(b)(1) and Ninth Circuit case law, DP and Citicorp should be required to disgorge the administrative payments they received in excess of their pro rata share, because insuf-

ficient assets exist to pay all administrative claimants in full.[1] The Trustee and Debtor argue that failure to require disgorgement will result in a windfall to DP and Citicorp and will create unjust hardship on the professionals who have not received any payments in this case.

After hearing held on September 14, 1995, this Court took the matter under submission.

## DISCUSSION

■ Section 365 of the Bankruptcy Code provides in pertinent part:

> The trustee *shall timely* perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3) (emphasis added).

Section 503 of the Code provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:
> >
> > > (B) any tax ...
> > >
> > > (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; ...

11 U.S.C. § 503(b)(1).

The Bankruptcy Amendments and Federal Judgeship Act of 1984 added paragraph (3) to § 365(d) requiring the trustee to "timely perform all the obligations of the debtor" arising from unexpired leases of nonresidential real property. The meaning of this new section (i.e., consequences for failure to perform and interaction with § 503(b)) is developing on a case by case basis. 2 *Collier on Bankruptcy,* ¶ 365.03.

In *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401 (9th Cir.1994), the Ninth Circuit Court of Appeals held that § 365(d)(3) mandates payment of rent to a landlord at the full lease amount during the period the debtor or trustee is deciding whether to reject or assume a lease. The court rejected debtor's argument that administrative rent claims paid under this section must be treated the same as professional fees under § 503(b)(1).[2] The estate in *Pacific* was administratively solvent, therefore, the Ninth Circuit did not address the issue of whether administrative rent claims are subject to disgorgement where the estate is administratively *in* solvent. This Court must examine whether the Ninth Circuit's analysis and, therefore, the holding, in *Pacific* is affected by the administrative insolvency of an estate.

This Court's analysis is guided, in part, by the Bankruptcy Court's decision in *In re Telesphere,* 148 B.R. 525 (Bankr.N.D.Ill.E.D. 1992). The *Telesphere* court held that administrative rent payments are mandatory under § 365(d)(3) regardless of the adminis-

---

**1.** At the time of the motion, the estate had approximately $273,492.83 available to pay claims. The Trustee and Debtor expect to realize approximately $118,000.00 in additional funds when the notes from the purchaser of the bowling centers become fully due and payable. The total estimated administrative expenses of the estate are approximately $800,000.

**2.** The Ninth Circuit rejected the reasoning of *In re Orvco, Inc.,* 95 B.R. 724, 728 (9th Cir.B.A.P. 1989) in which the Bankruptcy Appellate Panel found "no indication that Congress intended to grant landlords some type of superpriority status." *Orvco* at 728. Numerous courts disagreed with *Orvco* prior to the decision in *Pacific,* including this Court in *In re Muir Training Technologies, Inc.,* 120 B.R. 154 (Bankr.S.D.Cal. 1990). In *Muir,* this Court carefully limited *Orvco's* holding to cases where a lease was deemed rejected. *Muir* at 158.

But see, *In re MS Freight Distribution, Inc.,* 172 B.R. 976 (Bankr.W.D.Wash.1994), in which the bankruptcy court held that *Pacific–Atlantic* overruled *Orvco* only to the extent *Orvco* requires landlords to prove their administrative claims under § 503(b)(1) standards, but followed *Orvco* in holding that administrative rent is disgorgeable in an administratively insolvent estate. This court is of the opinion that *MS Freight* was wrongly decided.

trative solvency of the estate and that § 503(b)(1) and § 507(a)(1) do not apply.[3]

The majority of cases interpreting § 365(d)(3) hold that rental payments made under this section are payments of administrative expenses, and, since Congress did not expressly provide for any "superpriority," these rental payments should be made only to the extent that other administrative claims are paid. *In re Granada, Inc.*, 88 B.R. 369 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re Cardinal Industries, Inc.*, 109 B.R. 738 (Bankr.S.D.Ohio 1989); *In re Four Star Pizza*, 135 B.R. 498 (Bankr.W.D.Pa.1992). This court disagrees.

Congress did not provide that § 365(d)(3) payments should be made only to the extent that other administrative claims are paid.[4] The language of § 365(d)(3) is clear in providing that a trustee "shall timely perform all the obligations of the debtor...." 11 U.S.C. § 365(d)(3). The majority interpretation engrafts an exception to the language—"unless it appears that there may be insufficient funds to pay all administrative claimants." *In re Telesphere*, 148 B.R. 525, 528 (Bankr. N.D.Ill.E.D.1992).

Further, as the *Telesphere* court noted, legislative history reflects congressional concern for lessors of nonresidential real property, in contrast to other creditors, being forced to extend credit to an estate during the time given for assumption or rejection of a lease. *Id.* at 529. Because such a lessor cannot terminate the relationship with the debtor if prompt payment is not assured, the lessor becomes, in effect, an "involuntary extender of unsecured credit." *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 n. 2 (Bankr.E.D.Pa.1987).

Against this backdrop of congressional concern, it is not surprising to find that § 365(d)(3) and 365(d)(10) are the only Code provisions requiring the estate to "timely" perform the debtor's obligations. This Court fails to understand the majority's need for some express term, "superpriority" or otherwise, to discern what is a clear Congressional mandate that commercial lessors be given special protection. In fact, the congressional grant of special priority to commercial lease payments in the administrative payment scheme is apparent from even the most cursory reading of this section's plain language. *See Pacific*, 27 F.3d 401, 404 ("the statute has already granted priority payment status ...").

■  Accordingly, a landlord cannot be compelled to disgorge otherwise properly paid administrative rent payments because a case subsequently proves to be administratively insolvent. To hold otherwise would defeat the Congressional intent to give special protection to landlords under this section. *See also, In re Brennick*, 178 B.R. 305 (Bankr.D.Mass.1995).

### CONCLUSION

This Court hereby denies the Trustee and Debtor's motion. This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for DP and Citicorp are directed to prepare orders consistent with this opinion within ten (10) days of the date of entry of this Memorandum Decision.

---

3. In *Telesphere*, as in the instant case, the debtor argued that a landlord's rent claim was an administrative claim under § 503(b)(1) which must be paid pro rata with all other administrative claimants pursuant to the priority scheme of § 507(a)(1).

4. The majority cases ignore the Supreme Court's direction that the plain language of the Bankruptcy Code should not be departed from without substantial justification. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Patterson v. Shumate*, 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992).