**In re: C.Q., LLC, Debtor.**

**No. 03–17171.**

United States Bankruptcy Court,
W.D. Wisconsin.

Dec. 19, 2005.

J. David Krekeler, Krekeler Strother, S.C., Madison, WI, for Debtor.

MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

C.Q., LLC filed Chapter 11 bankruptcy in this court on September 29, 2003. On

November 21, 2003, the debtor's motion to assume its long term lease with Madison East Shopping Center Partners (MESC) was granted.

On December 8, 2004, the debtor's case was converted to Chapter 7. After conversion, the debtor did not assume or reject the lease, nor were any payments made for the amount due under the lease as required by 11 U.S.C. § 365(d)(3). Sixty days after conversion, the lease automatically terminated pursuant to 11 U.S.C. § 365(d)(4). The Chapter 7 trustee and MESC then entered into an agreement allowing the trustee to store items in the formerly leased building.

On October 25, 2005, MESC filed a motion for payment of an administrative claim in the amount of $21,133.30: $4,226.66 due for two months post conversion rent under the assumed lease, and $16,906.64 due under the storage agreement. MESC seeks immediate payment of $4,226.66 under 11 U.S.C. § 365(d)(3), and payment of the remaining $16,906.64 an administrative expense under 11 U.S.C. § 503(b)(1). There is no dispute about the $16,906.64 storage claim. However, the trustee (and a creditor, but that makes no difference) objects to immediate payment in full of MESC's pre-rejection rent claim for $4,226.66.

The trustee argues that the disputed amount is entitled only to administrative expense priority, because there is no provision in the Bankruptcy Code granting "super-priority" status to claims under Section 365(d)(3). The trustee also states that the bankruptcy estate does not have funds sufficient to make a payment of $4,226.66 to MESC.

Does Section 365(d)(3) create a super-priority for pre-rejection lease obligations? Section 365 provides in relevant part:

§ 365. **Executory** **contracts** **and** **unexpired leases**

(d)(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Section 365 clearly requires timely performance of pre-rejection lease obligations, but does not establish any consequence for failing to make the required payments. The Seventh Circuit Court of Appeals has not ruled on whether unpaid rent due under the requirement of "timely performance" is entitled to a super-priority. Our analysis is further complicated by the fact that bankruptcy courts addressing this issue have reached divergent results, even within this circuit. *Compare In re Joseph C. Spiess Co.*, 145 B.R. 597 (Bankr. N.D.Ill.1992), *with In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bankr. N.D.Ill.1992).

■ With all due respect to the several courts that have found unpaid rent to be a mere administrative priority, it is certain to me that the language in Section 365(d)(3) requiring "timely performance" places payment of rent before the payment of administrative expenses. That is true even where the bankruptcy estate is administratively insolvent. Congress has spoken clearly.

The courts that deny super-priority status to claims under Section 365 do not heed the directive Congress has given in § 365(d)(3). They say that Section 365 claims are administrative expenses under Section 503(b)(1) despite the absence of any reference between § 365(b)(3) and § 503 except the clear statement in Section 365 that Section 503(b)(1) is not to be withstood. They assert that if Congress had intended a super-priority status for Section 365 claims, it could have easily expressed that intent. *Spiess*, 145 B.R. at 608. Since Section 365 does not use the words "super-priority" for Section 365 claims, these courts determine that the priority scheme of Section 507 applies. *Id.* The reasoning of these courts is muddled and result oriented. Conversely, Judge Wedoff's analysis in *Telesphere* is simple and compelling.

*Telesphere*, contains a thorough analysis of the history of Section 365 and examines how it has been construed by bankruptcy courts. It concludes that 11 U.S.C. § 365(d)(3) entitles lessors to immediate payment of their claims, regardless of administrative insolvency of the debtor. 148 B.R. at 532. I agree.

 Claims under Section 365 are not specifically identified as administrative claims allowed under Section 503. Section 503(b)(1) provides, in relevant part:

§ 503. **Allowance of administrative expenses**

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

But, rent under § 365(d)(3) is payable, whether necessary or not, for the protection of landlords. It is not, nor is it intended to be, measured in any way by benefit to the debtor or the estate. Section 503 establishes a court-supervised process for allowing administrative claims, which includes notice and hearing. Section 507 provides, in relevant part:

§ 507. **Priorities**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

Section 507 then affords first priority to administrative expenses *allowed under section 503(b)*. Section 365, however, requires timely performance of the debtor's obligations. No notice or hearing is required, the obligations are simply required to be met in a timely fashion. This difference in prescribed procedure suggests that Section 365 claims are not to be paid according to Section 507.

The priority scheme established under Section 507 is not the exclusive method of paying obligations under the Code. For instance, the procedure for making payments under Section 363(c)(1) allows a trustee or debtor in possession to make payments of operational expenses in the ordinary course of business without notice or hearing. Section 363(c)(1) provides in relevant part:

§ 363 **Use, sale, or lease of property**

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

Payment of lease obligations under Section 365 is similar to payment of operational expenses under Section 363, in that both require payment of obligations as they come due, without court supervision. "Operational payments, by their nature, enjoy a de facto priority over administrative expenses, without any express provision for superpriority." *Telesphere*, 148 B.R. at 531. The Section 365 mandate that the trustee shall timely perform obligations indicates that "payment of claims under Section 365 should be made according to the procedure for making operational payments under Section 363(c)(1)." *Id.* "There is nothing in the language of Section 365(d)(3) suggesting that it involves any of the procedures for court supervised payment. To the contrary, Section 365(d)(3) provides that its terms apply 'notwithstanding Section 503(b)(1)'—the section providing a right to court supervised payment-and it requires the trustee or debtor in possession to act without application and without court review." *Id.*

The absence of specific language granting a super-priority to Section 365 claims does not indicate Congressional intent that Section 365 claims are to be lumped together with administrative expenses under Section 503. "There would have been no reason for Congress to have provided any express grant of superpriority for Section 365(d)(3) rent payments-such a 'superpriority' is implicit in the direction that the debtor make the payments without court involvement. The absence of an express grant of superpriority cannot, then, be a basis for disregarding the plain language of Section 365(d)(3)." *Id.*

To treat obligations under Section 365(d) the same as administrative expense claims under Section 503 would render the requirement that the trustee "timely perform" meaningless. Section 365 reflects congressional intent to ensure that lessors not be forced to extend credit to an estate during the time given for assumption or rejection of the lease. A lessor need not become an "involuntary extender of unsecured credit." *Id.* at 529. Tenants in bankruptcy must pay their lease obligations on time.

There is no indication Congress intended that the lessor would be required to give back rent that is timely paid, or that the lessor could opt not to pay rent at all in the event the estate is administratively insolvent. "Indeed, to withhold payment when the debtor may be administratively insolvent would actually reverse legislative intent, because it would require involuntary extensions of credit by lessors in the very circumstances where the debtors are least likely to honor their lease obligations." *Id.*

■ Pre-rejection lease payments are required to be timely made. Where the trustee does not perform that obligation, he cannot be excused from the consequence of his nonperformance. The claims must be paid when due, or in any event prior to allowed administrative expenses.

The trustee must immediately pay the rent obligation to MESC. It may be so ordered.

## ORDER

IT IS HEREBY ORDERED that C.Q., LLC's motion for immediate payment of pre-rejection lease obligations is granted.