**In re PUDGIE'S DEV. OF
NY, et al., Debtors.**

Bankruptcy No. 96 B 21969(ASH).

United States Bankruptcy Court,
S.D. New York.

July 30, 1998.

Jonathan S. Pasternak, Jill Abrams, Rattet, Hollander & Pasternak L.L.P., for Debtors and Pro Se Applicant..

Doria Stetch, Office of U.S. Trustee, New York City.

Douglas Skalka, Neubert, Pepe & Monteith, P.C., for Equity Committee.

Robert Feinstein, Kronish, Lieb, Weiner & Hellman L.L.P., Special Securities Counsel to Debtors and Pro Se Applicant.

William Kohler, Kohler & Barnes, P.C., for David Orenstein, CPA.

Robert Senzer, Fischbein, Badillo, Wagner, Harding, for Jeffrey Zisselman.

Glen Gruder, Mars, Slone & Conlon, for DiCarlo Food Distributors, Inc.

Schuyler Carol, Backenroth & Grossman, for Herbert Turk.

Mr. and Mrs. Martin Winter, Pro Se.

Bruce Kaplan, Hamburger, Maxson & Yaffe L.L.P., for Omni Partners.

### DECISION RESOLVING CLAIMS TO PROCEEDS OF SALE

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This contested matter brings to a conclusion the failed Chapter 11 case of Pudgies Chicken, Inc. and its affiliates (collectively "Pudgies" or the "Debtors")

After exhaustive and fruitless efforts to find an investor to finance a reorganization or a purchaser to acquire the business of Pudgies for an economically significant purchase price, the Debtors, having no other offer, no alternative means to salvage any going concern value of the business and no working capital to continue the business, negotiated an agreement to sell Pudgies for a net purchase price of $425,000 (the "Fund").

The Debtors' collective estate is administratively insolvent. At the hearing to approve the sale I directed that applications be filed by all parties claiming entitlement to receive all or part of the Fund and set July 7, 1998 as the hearing date to consider the applications. The following applications were filed: [1]

---

1. Table taken from page 2 of "Statement of Debtors in Response to Various Claims Against Estate

Sale Proceeds Derived from Court-approved Sale on May 28, 1998."

| Name of Entity | Role in Case | Amount Claimed |
| --- | --- | --- |
| United States Trustee | | $ 49,750.00 [2] |
| Herbert Turk | Secured Creditor | not less than $50,000 |
| DiCarlo Distributors | Secured DIP Supplier | $ 44,741.70 |
| Jeffrey Zisselman | Secured DIP Lender | $311,404.18 |
| Rattet Hollander & Pasternak, LLP | Counsel to Debtors | $ 31,193.43 |
| David Orenstein, CPA | Tax Return Accountants to Debtors | $ 22,145.00 |
| Kronish, Leib, Weiner & Hellman, LLP | Securities Counsel to Debtors | $ 5,587.00 |
| Neubert Pepe & Monteith | Counsel to Equity Comm. | $ 13,410.55 |
| Omni Partners, L.P. | Landlord of rejected lease | $156,676.27 |
| Blockbuster Videos, Inc. | Landlord of rejected lease | $ 59,800.00 |

Each of these claims will be considered in the discussion below.

*Turk*

By "Final Stipulation and Order Granting Authority of Debtors–in–Possession to Use Cash Collateral" dated February 12, 1997, Turk was granted a lien on all property of the Debtors with priority over all other indebtedness, subject and subordinate to (1) the superpriority claim of Sysco Food Services Corporation of Connecticut ("Sysco"), (2) unpaid United States Trustee fees, (3) debtor-in-possession financing and a carve-out for professional fees, subject to a cap for all amounts included in items (1), (2) and (3) of $375,000 in the aggregate. The $375,000 cap on all carve-outs from the Turk lien was reiterated in this Court's order dated March 13, 1997 providing for debtor-in-possession financing by Sysco, as provided in the following decretal paragraph:

ORDERED, that notwithstanding anything contained herein, the secured indebtedness of Sysco and the Lender to be senior to Turk, inclusive of: (a) fees; (b) costs, including interest; (c) expenses of all secured parties; and (d) claims of all professionals in the Debtors' Chapter 11 cases, shall not exceed the aggregate sum of $375,000.00. . . .

Since the amounts owing to the various parties to which Turk was subordinated in the aggregate far exceed the $375,000 cap and since Turk is entitled to priority over all other creditors, Turk is entitled to the full $50,000 difference between the $375,000 cap and the $425,000 Fund.

*United States Trustee*

Chapter 123, Section 1930(a)(6) of Title 28 states, in relevant part: "a quarterly fee shall be paid to the United States Trustee . . . in each case under Chapter 11 of title 11 for each quarter. . . . The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed." Section 507(a)(1) of Title 11 provides as the first priority "administrative

2. The United States Trustee applied for $67,750, but this figure included fees payable under 28 U.S.C. § 1930(a)(6) in respect of Pudgie-affiliated Debtor entities which were not included in the sale resulting in the Fund and which have no assets from which to pay United States Trustee fees. The $49,750 figure represents the unpaid United States Trustee fees applicable to the Pudgie-affiliated Debtor entities which were included in the sale resulting in the Fund.

expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." No priority is given as between administrative expenses under Title 11 and United States Trustee fees under Title 28. Thus, in the absence of a court order to the contrary, under Section 507(a)(1) unpaid United States Trustee fees would share pari passu with allowed administrative expenses.

■ The affected parties concede that the DIP supplier orders dated September 27, 1996 for Sysco and September 16, 1997 for DiCarlo provide, in substance and effect, that the Sysco and, subsequently, DiCarlo superpriority claims were subordinate to United States Trustee fees and senior to the Zisselman indebtedness. However, the March 13, 1997 order granting superpriority status to Zisselman, subordinate to Sysco, whether by advertence or oversight does not contain an express carve-out for or subordination to the United States Trustee fees. The ambiguity created by this lacuna may be resolved by simple logic. The September 27, 1996 and September 16, 1997 orders granting superpriority to Sysco and DiCarlo over all claims (including Zisselman's), while subordinating Sysco and DiCarlo to the United States Trustee fees, must necessarily render the Zisselman debt subordinate to the United States Trustee fees, even though Zisselman's March 13, 1997 order did not expressly recognize the primacy of the United States Trustee fees resulting from the other two others. No other interpretation of these three orders makes sense. Zisselman's argument to the contrary is rejected.

Accordingly, the United States Trustee shall be entitled to payment of $49,750 in fees from the Fund after the $50,000 payable to Turk but before payment to either DiCarlo or Zisselman.

### DiCarlo and Zisselman

There is no dispute that DiCarlo, the secured DIP supplier and successor to Sysco, and secured DIP lender Zisselman have priority over all other administrative creditors under this Court's orders dated September 27, 1996 (Sysco), September 16, 1997 (DiCar-

lo) and March 13, 1997 (Zisselman). Under these orders, DiCarlo has priority over Zisselman.

Accordingly, DiCarlo and Zisselman will be entitled to receive payments from the Fund after the payments to Turk and the United States Trustee, with DiCarlo entitled to priority over Zisselman. Subject to deductions for the award under Section 506(c) to Debtors' counsel, discussed below, this will result in payment in full to DiCarlo and partial payment to Zisselman of the balance of the Fund.

### Debtors' Counsel

■ The priority payments to which Turk, the United States Trustee, DiCarlo and Zisselman are entitled exceed the Fund by $30,-895.88. The question remains, however, whether fees and expenses may be awarded out of the amounts payable to secured parties under 11 U.S.C. § 506(c). This provision states:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

It is my conclusion that an award under Section 506(c) to Debtors' counsel, Rattet Hollander & Pasternak LLP, is appropriate in the circumstances of this case. The Rattet firm played an exceptional and vital role in bringing the sale of the Debtors' assets to fruition. Without the efforts of the Rattet firm, it appears likely that the sale would not have occurred, the Debtors' business operations would have ceased, the case would have been converted to Chapter 7 and the paltry physical assets would have been sold for nominal values undoubtedly equating to a small fraction of the Fund.

I have examined the application of the Rattet firm and the detailed description of services covered by the firm's application for $31,193.43. The time expended appears reasonable and limited to the firm's services rendered in connection with the sale resulting in the Fund. The pending application does not include any amount for the hun-

dreds of thousands of dollars of services rendered by the Rattet firm in its diligent representation of the Debtors throughout these Chapter 11 proceedings. I find that the $31,193.43 sought by the Rattet firm on this application constitutes "reasonable, necessary costs and expenses of . . . disposing of [property securing an allowed secured claim] to the . . . benefit [of] the holder of such claim" within the meaning of the statute.

Counsel fees and expenses may not be deducted from the $50,000 payment to be made to Herbert Turk, by reason of the $375,000 cap provisions of the February 12 and March 13, 1997 orders. Section 506(c) provides that the necessary costs and expenses of disposing of property of the estate may be paid from "property securing an allowed secured claim" despite the invasion of the security interest, upon the evident rationale that costs incurred to benefit the secured party should be charged to the secured party. The same rationale should be applied to allocate a portion of the costs and expenses of disposing of the Debtors' property for the benefit of the United States Trustee, whose right to fees was unsecured.

Accordingly, the $31,193.43 payable to the Rattet firm shall be paid from the shares of the Fund allocable to the United States Trustee, DiCarlo and Zisselman in proportion to the payments to which each is entitled out of the Fund.

### Other Professionals

■ The applications of David Orenstein, CPA, accountants to the Debtors, Kronish, Lieb, Weiner & Hellman LLP, securities counsel to the Debtors, and Neubert Pepe & Monteith, P.C., counsel to the Equity Committee, must be denied. I have no doubt that these professionals rendered important and effective services to the Debtors during their Chapter 11 proceedings. The same may unquestionably be said for the able counsel to the Creditors Committee, who did not make application for a share of the Fund, recognizing that the Debtors' estate is administrative-

ly insolvent. For all the contributions that these several professionals may have made during the course of the Debtors' Chapter 11 cases, their work did not contribute to "preserving" the estate assets within the meaning of Section 506(c), and none of these professionals made a material contribution to the process of "disposing" of the assets, as did the Debtors' counsel.

Accordingly, the applications of the professionals other than the Rattet firm must be denied.

### Landlord Claims

Formal administrative claims against the Fund were filed by Omni Partners LP, landlord of the Debtors' headquarters offices, and Blockbuster Videos, Inc., landlord of one of the Debtors' company-owned stores. In addition, the Court has treated as a claim against the Fund a letter written by Martin J. Winter, pro se, landlord of premises rented by one of the Debtors' subsidiaries for use as a company store, which was completely gutted shortly before the Debtors' bankruptcy filings but was abandoned shortly thereafter. All three leases were rejected. These landlords assert a superpriority claim to the Fund under 11 U.S.C. § 365(d)(3).[3]

Section 365, which governs the assumption, assignment and rejection of executory contracts and unexpired leases, was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–358, 98 Stat. 333 (1984). The amendments to this section were intended to give further protection to commercial lessors. Jeffrey S. Battershall, *Commercial Leases and Section 365 of the Bankruptcy Code*, 64 Am. Bank. L.J. 329 (1990). Specifically, subsection (d)(3) affords a landlord the right to "timely" performance of all lease obligations, including rent payments. It states:

> (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real

---

**3.** The Martin Winter post-petition claim under Section 365(d)(3) was for approximately one month.

property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

While arguably clear on its face, Section 365(d)(3) has given rise to considerable litigation and, to a degree, conflicting opinions by different courts. Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3); Statutory Minefield*, 68 Am. Bank. L.J. 437, 439 (1994). The statutory obligation of the trustee or debtor to "timely perform all the obligations ... under any unexpired lease ... until such lease is assumed or rejected, notwithstanding section 503(b)(1)" undoubtedly accords nonresidential lessors some preferred status vis-a-vis other administrative creditors, but the extent and timing of such preferred status is the subject of disagreement among the courts.

■ One area of disagreement, related to but not determinative of the present controversy, is the question of the immediacy with which "all the obligations" including rental payments must be performed. Some courts have held that the statutory mandate that the trustee "shall timely perform" all obligations means what it says, and that post-petition rent must be paid when due under the lease, subject to the power of the court to extend the time of performance for 60 days after the date of filing ("but the time performance *shall not be extended* beyond such 60–day period"). That is the view of this Court. *In re Pudgie's Dev. of NY*, 202 B.R. 832, 836 (Bankr.S.D.N.Y.1996) ("the purpose of Con-

gress to treat post-petition rent the same as section 363(c) operating expenses and to prefer landlords over administrative creditors is perfectly clear on the face of the statute"). To the same effect, *see In Re Telesphere Communications, Inc.*, 148 B.R. 525, 529 (Bankr.N.D.Ill.1992) ("Indeed, to withhold payment when the debtor may be administratively insolvent would actually reverse legislative intent, because it would require involuntary extensions of credit by lessors in the very circumstances where the debtors are least likely to honor their lease obligations"); *In Re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882–83 (Bankr.E.D.N.Y.1986) ("In unmistakable terms, Section 365(d)(3), with certain exceptions not relevant here, requires trustees and debtors-in-possession to timely perform the debtor's obligations, including payment of all rents reserved under the lease until the lease is assumed or rejected. The command of Section 365(d)(3) is clear and unambiguous. It means exactly what it says").

Other courts have said that, despite the statutory mandate to "timely perform all the obligations" under a commercial lease, if there is uncertainty regarding the administrative solvency of the estate, payment of post-petition rent should be deferred and paid along with other Chapter 11 administrative expenses on a pro rata basis. *See In re Wingspread Corp.*, 116 B.R. 915, 932 (Bankr. S.D.N.Y.1990) ("Given that there is a good deal of doubt concerning the ability of this estate ultimately to pay all expenses of administration ... to honor the request for immediate payment would be, in effect to grant G & W a superpriority claim")[4]; *In Re Virginia Packaging Supply Company, Inc.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990) ("It is by no means clear that the bankruptcy court is bound to compel immediate payment of such obligations, especially in cases where there may not be sufficient funds to pay all administrative claims in full"); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D.Pa.1987) ("the

---

**4.** The claimant in *Wingspread* was not a landlord timely seeking to enforce its Section 365(d)(3) right to immediate payment, but a guarantor who had paid the debtor's rent and was asserting an administrative claim as subrogee.

landlord's section 365(d)(3) administrative expense claim is not entitled to superpriority status; rather, it is entitled to payment pro rata with all other allowed chapter 11 administrative expense claims"); *In re Tandem Group Inc.*, 61 B.R. 738, 742 (Bankr.C.D.Cal. 1986) (Section 365(d)(3) rent considered as an administrative expense and therefore subject to payment priorities set forth in Section 726(b)). Indeed, some courts have ordered payment subject to recapture if there are insufficient funds to pay all administrative claims. *In re Buyer's Club Markets, Inc.*, 115 B.R. 700, 702 (Bankr.D.Colo.1990) (allowed as Section 503(b)(1)(A) administrative expense subject to recapture if insufficient funds available to pay Chapter 7 and Chapter 11 expenses); *Dieckhaus*, 73 B.R. at 973 (immediate payment ordered, but subject to recovery if all other administrative claims not paid in full).

The landlords argue that the "timely performance" requirement of Section 365(d)(3) gives them a superpriority administrative claim for rent which is not timely paid. The argument stretches the statute beyond its limits. Although this Court adheres to the view that Section 365(d)(3) grants a landlord a right to timely payment of post-petition rent obligations, if that right is not enforced by the landlord the statute does *not* give the landlord a superpriority claim for accrued but unpaid rent, to the prejudice of other administrative or priority claims. *See, e.g., In re Joseph Spiess Co.*, 145 B.R. 597, 608 (Bankr.N.D.Ill.1992) ("This language [of timely performance] in no way, however, expressly elevates these post-petition obligations to super-priority status. Only section 364 contains any such language"); *In re Wingspread Corp.*, 116 B.R. at 932 ("section 365(d)(3) does not serve as the basis for a superpriority claim").

■ A significant jurisprudential difference exists between the *right* to prompt payment conferred by Section 365(d)(3) and a *claim* for accrued but unpaid rents. Section 365(d)(3) advances the landlord to the head of the line for current payment of ongoing expenses in recognition of his unique, involuntary creditor status. And, as with other post-petition payments essential for the continued operation of the debtor's business, such as for supplies, utilities, employee wages and the like, these payments are not subject to recapture. But once the landlord allows his *right* to timely payment to lapse into an accrued liability for unpaid rents, Section 365(d)(3) becomes irrelevant. The accrued liability for rents is no more than the landlord's lapsed right. A *claim* comes into existence on the basis of that accrued liability, but Section 365(d)(3) does not purport to establish claim priority. The statute does not allow the landlord to permit his right to lapse into a claim for accrued amounts, and later attempt to assert the claim on a superpriority basis ahead of other administrative or superpriority creditors.

■ Section 365(d)(3) does not speak to the landlord's remedy, but other provisions of the Bankruptcy Code do. The landlord may enforce his right to timely performance under Section 365(d)(3) by moving to lift the stay for cause under Section 362(d)(1), or moving directly under Section 365(d)(3) to compel compliance on pain of contempt. What the landlord *may not* do is sit on his rights and allow the rent obligation to accrue, and later attempt to seek a superpriority status as an administrative claimant.

### Summary

To summarize the foregoing, the following payments shall be made out of the Fund: Turk shall be paid $50,000; subject to payment of the award to the Rattet firm, the United States Trustee fees shall be paid in full, DiCarlo shall be paid in full and Zisselman shall be paid to the extent of the remainder of the Fund; the Rattet firm shall be paid the full amount of its application, to be deducted pro rata from the amounts payable to the United States Trustee, DiCarlo and Zisselman. All other applications are denied. Debtors' counsel is directed to settle an appropriate order consistent with this decision.