In re PUDGIE'S DEVELOPMENT
OF NY, INC., et al., Debtors.

Omni Partners, L.P., Appellant,

v.

Pudgie's Dev. of NY, Inc., Appellee.

No. 98–Civ.–7870 (WCC).
Bankruptcy Nos. 96B–21969 to 96B–
21976, 96B–22027, 96B–22035, 96B–
22105, 96B–22163 to 96B–22181 (ASH).

United States District Court,
S.D. New York.

Sept. 29, 1999.

Hamburger, Maxson & Yaffe, LLP, Melville, NY, Richard Hamburger, Bruce H. Kaplan, of counsel, for appellant.

Carolyn S. Schwartz, United States Trustee, New York City, Diana G. Adams, Asst. United States Trustee, of counsel, for the United States Trustee.

Rattet Hollander & Pasternak, LLP, Harrison, NY, Jonathan S. Pasternak, Jill A. Abrams, of counsel, for debtors/appellees.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior
District Judge.

This matter is before this Court on an appeal taken by Creditor Omni Partners, L.P. ("Omni" or "Appellant") from the order of the Bankruptcy Court, entered August 11, 1998, denying its demand pursuant to 11 U.S.C. § 365(d)(3) for distribution from the bankruptcy estate of Pudgie's Famous Chicken, Ltd. and affiliated corporate entities ("Debtors").

## BACKGROUND

Between September 18 and October 10, 1996, Debtors filed various petitions under Chapter 11 of the Bankruptcy Code. The Chapter 11 cases were consolidated on October 15, 1996.

Debtor Pudgie's Famous Chicken, Ltd., as lessee, and Omni, as lessor, were parties to a pre-petition lease ("Lease") for office space utilized by Debtors as their corporate headquarters (the "Premises") from the entry of the orders for relief beginning on September 18, 1996 (the "Filing Date")[1] through May 28, 1998. On the Filing Date, Debtors were indebted to Omni in the amount of $7,859.66 which represented pre-petition unpaid rent and other charges. The Debtors failed to make any post-petition rent payments. The post-petition unpaid rent totaled $156,676.27 when the Lease was deemed rejected on May 4, 1998.

Pursuant to 11 U.S.C. § 365(d)(4), a lease for nonresidential real property is deemed rejected sixty days after entry of the order for relief unless the trustee assumes the lease or the Court enters an order extending the sixty day period.[2] On

October 22, 1996, Debtors applied to extend its time to assume or reject the Lease. By Order signed January 8, 1997, the Bankruptcy Court granted Debtors' request and extended Debtors' time to assume or reject the Lease through and including confirmation of a plan of reorganization.

During this post-petition, pre-rejection period, Omni claims that Debtors made affirmative representations that they would soon pay the accrued lease obligations in full.

By Notice of Motion dated February 28, 1998, Omni sought to compel Debtors to assume or reject the Lease and pay all post-petition rent due, or to allow Omni to commence eviction proceedings. In response, the Bankruptcy Court on April 7, 1998 directed Debtors to pay $28,000, representing two months rent, to Omni on or before May 4, 1998.

Debtors failed to pay the $28,000 or any post-petition rent. As a result of this default, the Lease was deemed rejected on May 4, 1998, pursuant to the Bankruptcy Court's April 7, 1998 Order. On May 13, 1998, pursuant to Omni's Order to Show Cause for Contempt, the Bankruptcy Court found that the Debtors were in contempt.

On May 28, 1998, the Court approved the sale of all of Debtors' assets to Pudgie's Acquisition Corp. ("PAC") for $425,000. Also at the May 28, 1998 hearing, in lieu of signing Omni's Order for Civil Contempt, the Court brokered an agreement under which the Debtors would vacate the office space and PAC would pay Omni use and occupancy until it vacated.

---

1. The time period between the Filing Date and rejection of the Lease is often referred to as the "post-petition, pre-rejection" period.

2. Section 365(d)(4) states, in relevant part, as follows:

   Notwithstanding paragraphs (1) and (2) of this section, in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such sixty day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

By Decision Resolving Claims to Proceeds of Sale entered July 30, 1998 and Order dated August 7, 1998 and entered August 11, 1998, the Court distributed the sale proceeds. First, the Court awarded the United States Trustee approximately $45,000 in fees pursuant to 28 U.S.C. § 1930(a)(6).

Next, secured creditor Herbert Turk was awarded $50,000. Turk had a lien on all property of the Debtors with priority over all creditors, subject to a $375,000 carve-out which included the superpriority claim of Sysco Food Services Corporation of Connecticut ("Sysco"), unpaid United States Trustee Fees, debtor-in-possession financing and professional fees. Turk was awarded the difference between the $425,000 sale proceeds and the $375,000 carve-out, or $50,000.

Next, the Court awarded $41,019.90 to DiCarlo Distributors, Inc. ("DiCarlo"), whose financing replaced the Sysco financing and was secured by a superpriority lien in all of the Debtors' assets, subordinate to the Trustee's fees.

The Court also awarded $257,175.10 to Jeffrey Zisselman, who had provided post-petition financing to the Debtors secured by a senior lien. Zisselman's lien was included in the Turk "carve-out" but subordinate to Sysco's (now DiCarlo's) lien.

Finally, the Court awarded $31,193.43 to Debtors' Counsel, the Rattet firm, pursuant to 11 U.S.C. § 506(c), which provides that necessary costs of disposing of property of the estate may be charged to the secured parties. The Court, after finding that the Rattet firm's services were "reasonable, necessary costs and expenses of the disposing of the estate property," charged the Rattet award against the awards of the Trustee, DiCarlo and Zisselman. Accordingly, the entire proceeds from the sale of Debtors' assets were paid out to the Trustee, Turk, DiCarlo, Zisselman, and the Rattet firm.

Omni also filed an administrative claim against the sale proceeds, asserting a su-perpriority claim under 11 U.S.C. § 365(d)(3). The Court held that Omni was not entitled to superpriority and denied its claim against the sale proceeds. On appeal, Omni also asserted the right to payment of accrued unpaid rent as an operational expense charged to the secured creditors under § 506(c).

## DISCUSSION

### I. *Standard of Review*

■ This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158. On appeal, a bankruptcy court's conclusions of law are reviewed de novo. FED. R.BANKR. 8013; *Federal Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130 (2d Cir.1992); *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291, 294 (S.D.N.Y.1991), *aff'd*, 964 F.2d 166 (2d Cir.1992) (per curiam). However, Federal Rule of Bankruptcy 8013 provides that, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *See also Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir.1990); *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990); *BT/SAP Pool C Associates v. Coltex Loop Central Three Partners*, 203 B.R. 527 (S.D.N.Y.1996), *aff'd sub nom, In re Coltex Loop Central Three Partners*, 138 F.3d 39 (2d Cir.1998).

### II. *11 U.S.C. § 365(d)(3)*

Section 365(d)(3) of the Bankruptcy Code was enacted in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act. It states in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or

rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

■ The legislative history indicates that the purpose of the amendment was to relieve the burden placed on nonresidential real property lessors (or "landlords") during the period between a tenant's bankruptcy petition and assumption or rejection of a lease. *See* 130 Cong.Rec. S8894–95 (daily ed. June 29, 1994) (remarks of Senator Hatch). Prior to these amendments, the Bankruptcy Code did not require a trustee to perform its obligation under a nonresidential lease, but the landlord was forced to provide services to the debtor-tenant. Congress specifically chose to protect real property lessors because: "the Landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position." *Id.*

Despite the seemingly clear purpose and language of § 365(d)(3), the application of the statute has been the source of great division among bankruptcy courts. *See, e.g.,* Joshua Fruchter, *To Bind or Not To Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield,* 68 Am.Bankr.L.J. 437, 439 (1994) (commenting that "each clause construed has triggered considerable debate as to its intent and meaning"). In order to decide whether Omni is entitled to distribution from the proceeds of the sale of Debtors' assets this Court must consider: (A) whether a landlord must show the actual value of the use and occupancy to the bankruptcy estate; (B) the timing of payment to the landlord; and (C) the landlord's remedy for the failure of the trustee or debtor to pay the lease obligations during the post-petition, pre-rejection period.

### A. Section 503(b)(1)'s "Benefit Test" is Not Applicable to § 365(d)(3) Obligations

■ Prior to the amendment of § 365(d)(3), debtors were obligated to pay

rent as an administrative expense of the bankruptcy estate, but only to the extent to which the lease payments were "actual, necessary costs and expenses" under § 503(b)(1). 11 U.S.C. § 503(b)(1).[3] The majority of courts agree that § 365(d)(3) now gives landlords a right to payment in the full amount of rent and other charges under the lease without showing that the amount is reasonable or of benefit to the estate. *See In re Pacific–Atlantic Trading Co.,* 27 F.3d 401, 404 (9th Cir.1994); *In re Microvideo Learning Systems, Inc.,* 232 B.R. 602, 607 (Bankr.S.D.N.Y.1999); *In re Wingspread Corp.,* 116 B.R. 915, 925 (Bankr.S.D.N.Y.1990); *but see Great Western Savings Bank v. Orvco Inc. (In re Orvco, Inc.),* 95 B.R. 724, 728 (9th Cir. BAP 1989) (holding that a lessor must show reasonableness of the rent and the other factors under § 503(b)(1)(A)). This Court agrees that the clause "notwithstanding section 503(b)(1)" means "irrespective of whether payments required under the lease meet the usual requirements for administrative status, reasonableness and benefit to the estate, they are unconditionally due." *In re Wingspread,* 116 B.R. at 926.

### B. Section 365(d)(3) Requires Timely Payment of Lease Obligations

Much stronger disagreement exists as to the timing of the payment of lease obligations. On its face, the statute indicates that the trustees are obligated to timely pay rent. Timing of payment is critical because "(i)n many bankruptcy cases, when a claim is paid makes the difference as to whether it will be paid at all." *In re Virginia Packaging Supply Co.,* 122 B.R. 491, 495 (Bankr.E.D.Va.1990). When the bankruptcy estate is solvent, the landlord is entitled to immediate payment of rent as it becomes due under the lease. *See Maroon v. Four Star Pizza, Inc. (In re Four Star Pizza, Inc.),* 135 B.R. 498, 500

---

**3.** The standard set forth in § 503(b)(1) is also    called the "benefit test."

(Bkrtcy.W.D.Pa.1992) (requiring immediate payment absent a showing of substantial doubt that there will be sufficient funds to pay all administrative claims in full); *In re Granada, Inc.*, 88 B.R. 369, 372 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bkrtcy.E.D.Pa.1987). However, when there is a risk of insolvency, the effect of requiring immediate payment of the lease obligations is to give lessors a superpriority administrative expense claim. In this case, the bankruptcy estate is administratively insolvent because distribution to the secured creditors and United States Trustee exhausted the entire proceeds from the Debtors' sale of assets to PAC.

The Second Circuit has not addressed whether a landlord is entitled to immediate payment of lease obligations when the bankruptcy estate is insolvent, and there is a split among the other courts that have considered this issue. The majority view rejects any superpriority for post-petition, pre-rejection administrative rent claims. If the bankruptcy estate is insolvent, under the majority position the landlord is paid with the other administrative claims on a pro rata basis. *See In re Amber's Stores, Inc.*, 193 B.R. 819, 825 (Bankr.N.D.Texas 1996); *In re Joseph C. Spiess Co.*, 145 B.R. 597, 608 (Bankr. N.D.Ill.1992). The majority's rationale is based upon the failure of the Bankruptcy Code expressly to grant priority to claims under § 365(d)(3). *See In re J.T. Rapps, Inc.*, 225 B.R. 257, 261 (Bankr.D.Mass. 1998). The majority argues that if Congress wanted to give landlords superpriority status, they could have done so expressly. *See In re Joseph C. Spiess*, 145 B.R. at 608. As the court in *In re J.T. Rapps* pointed out, "(i)n at least three sections of the Bankruptcy Code, Congress explicitly provides a claim with blanket priority over another class of claims." 225 B.R. at 263 (citing 11 U.S.C. §§ 726(b), 364(c)(1), 507(b)). Because priorities are fixed by Congress, the majority argument follows, courts are not free to grant priority to

claims without a clear directive in the bankruptcy code. *See In re Granada*, 88 B.R. at 373.

Other courts, in an attempt to resolve the "timely perform" language of the statute with the absence of an express grant of priority, agree that landlord claims under § 365(d)(3) do not have superpriority, but require immediate payment subject to disgorgement if necessary to pay all other administrative claimants. *See In re Tel-Central Communications, Inc.*, 212 B.R. 342, 349 (Bkrtcy.W.D.Mo.1997) (noting that if it is shown that there is a high likelihood that the bankruptcy estate will be administratively solvent, the court will enter an order for immediate payment subject to disgorgement); *In re Buyer's Club Markets, Inc.*, 115 B.R. 700, 701 (Bankr.D.Colo.1990) (ordering immediate payment of § 365(d)(3) claim subject to recapture by the trustee if there are insufficient funds to pay other administrative claims); *In re Cardinal Indus., Inc.*, 109 B.R. 738, 742 (Bankr.S.D.Ohio 1989) (finding no superpriority but ordering immediate payment subject to disgorgement).

In contrast, some courts have given special administrative priority to post-petition rent due under a nonresidential lease. *See In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987). The minority view bases its grant of priority on the express language of § 365(d)(3): "(i)t means exactly what it says." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bkrtcy.E.D.N.Y.1986). These courts argue that because Congress did not limit the application of § 365(d)(3) to cases in which the bankruptcy estate is solvent, the court should follow the plain meaning of the statute and require immediate payment of post-petition rent claims, regardless of the solvency of the estate.

The minority view also departs from the majority's characterization of claims under § 365(d)(3) as administrative. In *In re Telesphere*, the court suggested that payments under § 365(d)(3) should be consid-

ered akin to operational payments under § 363(c)(1). 148 B.R. 525, 531 (Bankr. N.D.Ill.1992). Operational payments can be made by the trustee "to use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Similarly, § 365(d)(3) payments should be made without court supervision, as indicated by the language in the statute excepting the payments from the requirements of § 503(b)(1). As operational expenses, post-petition rent payments are not subject to disgorgement, and can "enjoy a de facto priority over other administrative expenses, without any express provision for superpriority." *In re Telesphere*, 148 B.R. at 531; *see also In re Brennick*, 178 B.R. 305, 308 (Bankr. D.Mass.1995) (finding post-petition rent claims to be operational payments); *Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965, 971 n. 10 (D.Kan.1993) (same); *but see In re New Almacs, Inc.*, 196 B.R. 244, 249 (Bankr.N.D.N.Y.1996) (noting that the "fact that § 365(d)(3) makes reference to § 503(b)(1) lends support to the conclusion that the obligations are administrative expenses of the estate"). Therefore, courts that adhere to the minority view usually order immediate payment of post-petition, pre-rejection rent, and refuse to make these payments subject to disgorgement, regardless of the insolvency of the estate.

The minority view also contends that granting priority to these post-petition claims for rent most closely follows Congressional intent. The legislative history of § 365(d)(3) indicates that Congress intended to give special preference to claims of landlords during bankruptcy proceedings and encourage timely payment of rent. One commentator has argued that under the majority position "there would be no incentive to adhere to the statute because, in the case of an anticipated rejection, the trustee would have very good reasons to disregard it," withhold rent payments, and leave the landlord without payment when the estate becomes insolvent. *See* C. Alan Gauldin, *The Commercial Real Estate Landlord's Rights to Receive Post–Petition Rental Payments Under Section 365(d)(3) of the Bankruptcy Code*, 14 U.Ark. Little Rock L.J. 491, 505–06 (1992) (concluding that the minority position best represents Congressional intent).

The Bankruptcy Court agreed with the minority position to the extent that the "shall timely perform" language of § 365(d)(3) requires immediate payment of post-petition lease obligations to the landlord. *See In re Pudgie's Dev. of NY*, 223 B.R. 421, 426 (Bankr.S.D.N.Y.1998) (*"Pudgie's II "*). But it was not willing to go as far as to grant superpriority to the landlords: "... the statute does not give the landlord a superpriority claim for accrued but unpaid rent, to the prejudice of other administrative claims." *Id.* at 427.

■ This Court agrees with the position taken by the Bankruptcy Court below. The plain meaning of § 365(d)(3) requires that the landlord obtain payment as lease obligations become due. *See Pudgie's II*, 223 B.R. at 426 (quoting *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882–83 (Bankr.E.D.N.Y.1986)) ("The command of Section 365(d)(3) is clear and unambiguous. It means exactly what it says."). The legislative history of the statute also supports requiring immediate payment of lease obligations because it demonstrates Congress's intent to provide landlords with protection during the post-petition, pre-rejection time period. *See* 130 Cong.Rec. S8894–95 (daily ed. June 29, 1994) (remarks of Senator Hatch).

■ In addition, payments to the landlord under § 365(d)(3) should not be subject to disgorgement, even if the bankruptcy estate becomes insolvent. The Bankruptcy Court below, in its first decision in the Pudgie's bankruptcy proceedings, adopted the reasoning of the court in *In re Telesphere*, and characterized payments under § 365(d)(3) as operational payments. *See In re Pudgie's Dev. of NY*,

*Inc.*, 202 B.R. 832, 836 (Bankr.S.D.N.Y. 1996) ("*Pudgie's I*"). This analysis is persuasive because the "notwithstanding section 503(b)(1)" language in § 365(d)(3) excepts payments from the benefit test and the notice hearing requirement of § 503(b)(1). *See In re Pacific–Atlantic Trading*, 27 F.3d at 404. Because § 365(d)(3) payments are to be made without court supervision and without the need to show a benefit to the bankruptcy estate, they are more akin to operational payments. Just as operational payments are not subject to disgorgement, payments made to landlords under § 365(d)(3) should not be subject to disgorgement if the estate is later found to be administratively insolvent. *See* 11 U.S.C. § 363(c)(1).[4]

The right to "timely performance," however, is not equivalent to superpriority. In a decision dealing with prioritization of taxes and penalties as administrative expenses under the Bankruptcy Code, the Supreme Court held that the bankruptcy court could not equitably subordinate claims in derogation of the scheme of priority created by Congress. *See United States v. Noland*, 517 U.S. 535, 542, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). Similarly, this Court cannot reorder the priority scheme for administrative claims created by Congress. *See* 11 U.S.C. §§ 507(b), 364(c)(1), and 726(b) (granting administrative priority to specified claims); *see also In re MJ 500, Inc.*, 217 B.R. 93, 94 (Bankr. D.Mass.1998) (noting that the effect of holding in previous case that § 365(d)(3) required immediate payment was "to give rent priority over other administrative claims and thus to violate the Bankruptcy Code's express priority scheme").

■ A landlord is entitled to timely payment of rent during the post-petition, pre-rejection period of the bankruptcy, but will not be granted superpriority if unpaid rent

accrues during this time period. *See Pudgie's II*, 223 B.R. at 427; *In re Patella*, 102 B.R. 223, 225–26 (Bankr.D.N.M.1989); *In re J.T. Rapps*, 225 B.R. at 263. This Court agrees with the Bankruptcy Court that there is a difference between the right to prompt payment and a claim for accrued but unpaid rents. *See Pudgie's II*, 223 B.R. at 427. As the Court in *In re R.H. Macy & Co.*, observed: "Congress chose to use the word 'obligation' rather than the word 'claim' … Congress certainly knew how to use the word claim, and could have used it in section 365(d)(3)." 152 B.R. 869, 872 (Bankr.S.D.N.Y.1993). During the post-petition, pre-rejection time period, the debtor-tenant has an obligation to continue paying its lease obligations. But a landlord cannot wait while unpaid rent accrues in hope that his later claim for lease payments will be given superpriority over secured creditors that have specific statutory priority.

## C. Landlords' Remedy for Default Under § 365(d)(3) is Not Superpriority Status

Although there is disagreement as to the timing of payment, the majority of courts agree that there is no remedy specified for default under § 365(d)(3). *See In re Microvideo Learning Sys., Inc.*, 232 B.R. 602, 605 (Bankr.S.D.N.Y.1999); *In re Rich's Dep't Stores, Inc.*, 209 B.R. 810, 815 (Bankr.D.Mass.1997). Courts differ as to the remedy provided for the landlord when the debtor or trustee fails to fulfill its obligations under § 365(d)(3) and unpaid rent accrues.

In *In re J.T. Rapps*, the landlord was granted a claim for unpaid rent immediately after the lease was rejected, but the "priority and payment of the claim was to be determined by the party in interest." 225 B.R. at 259. The landlord waited until three years after the Chapter 11 case was

---

**4.** 11 U.S.C. § 363(c)(1) states in relevant part as follows:

(T)he trustee may enter into transaction, including the sale or lease of property of the

estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

converted to Chapter 7 to finally seek an order compelling immediate payment of the claim for unpaid lease obligations under § 365(d)(3). The estate was administratively insolvent, and the Bankruptcy Court held that granting priority to the landlord over other administrative creditors after the landlord failed to act promptly to enforce its claim for unpaid rent would create a remedy for default under § 365(d)(3) at the expense of the other creditors. *See id.* at 263.

Similarly in *In re MJ 500,* the landlord sought payment of its claim under § 365(d)(3) after the bankruptcy estate was converted into Chapter 7 and the Court denied immediate payment because it would unfairly deprive Chapter 7 claimants. 217 B.R. at 95. The court in that case observed that the remedy of immediate payments is "most appropriate when a debtor-in-possession, despite adequate funds, fails to pay rent when due and, before the coffers are depleted, the landlord moves quickly for immediate payment." *Id.* Like the landlords in *In re J.T. Rapps* and *In re MJ 500,* Omni allowed unpaid rent to accrue for almost seventeen months before moving to compel payment on February 28, 1998.

■ Omni argues that § 365(d)(3) does not require the landlord to take any action to collect accrued unpaid rent. Although in *In re Pacific–Atlantic Trading,* the Court stated in dicta that "the landlord is not required to take any action under the statute," the present case is distinguishable. 27 F.3d at 405. In *In re Pacific–Atlantic Trading,* the court ordered immediate payment of the full lease obligation as an administrative expense because the bankruptcy estate was solvent. *See id.* The court specifically stated that it was not expressing an opinion on whether the accrued unpaid lease obligations were entitled to superpriority, but only deciding that the § 503(b)(1) benefit test did not apply. *See id.* at 405. In contrast, the Debtors here are administratively insolvent. The Bankruptcy Court below has

already held that Omni was "entitled to payment at the full lease rate and the 'benefit test' ... is not applicable." *Pudgie's I,* 202 B.R. at 834. Although the landlord may not be required to act to receive payment under § 365(d)(3) on a timely basis, it does not follow that a landlord may allow unpaid rent to accrue with the expectation that these obligations will be given superpriority even within an administratively insolvent estate. The landlord has a right to timely payment without the necessity of court action during the post-petition, pre-rejection period, but if the debtor does not pay his rent, the landlord must act to obtain payment.

Even without granting superpriority status to accrued unpaid lease obligations under § 365(d)(3), the landlord has remedies available. During the post-petition, pre-rejection period, the landlord may move for relief from the automatic stay and evict the debtor-tenant. The landlord may also seek an order directing the debtor-tenant to pay the lease obligations immediately. Finally, the landlord may move for an order to convert the case to one under Chapter 7. *See In re J.T. Rapps,* 225 B.R. at 263. What a landlord cannot do is "sit idly by and not seek either payment or recovery of the premises by relying on the fact that his contractual rent will be accorded administrative priority." *In re Tammey Jewels, Inc.,* 116 B.R. 292, 294 (Bankr.M.D.Fla.1990).

■ In the present case, the Bankruptcy Court found that the landlord "sat on his rights" and allowed the rent obligation to accrue. *Pudgie's II,* 223 B.R. at 427. This factual finding may only be reversed if it is clearly erroneous. *See* Fed. R.Bankr.8013. Appellant argues that the Bankruptcy Court's finding was clearly erroneous because it failed to consider Omni's motion to compel the Debtors to pay rent, the Court's April 7, 1998 Order, Omni's Motion for Contempt dated May 13, 1998, and affirmative representations made by the Debtors. But even considering all of the above, Omni did not diligent-

ly assert its right to immediate payment, but merely allowed the unpaid rent to accrue.

Debtors filed for bankruptcy beginning on September 18, 1996. From that date until rejection of the Lease, Omni was entitled to timely payment of the rent. Yet Omni waited until February 28, 1998, more than seventeen months after the Filing Date, to seek enforcement of its right to rent payment. In the interim, Debtors were unable to find an investor to finance a reorganization and were forced to sell all of their assets to PAC. Even considering any affirmative representations made by the Debtors that they would pay the rent in full, Omni should have enforced its right to immediate payment. In light of Omni's lengthy delay in seeking enforcement of its rights under § 365(d)(3), this Court cannot find that the Bankruptcy Court's finding that the Appellant "sat on its rights" was clearly erroneous.

### III. *Section 506(c)*

Omni also seeks payment of accrued unpaid rent under 11 U.S.C. § 506(c) as a cost and expense of preserving the Debtors' property.[5] Omni argues that the secured creditors benefitted from Debtors' use of their headquarters without paying rent, therefore the secured creditors' claims should have been charged under § 506(c).

■■■■ Generally, the administrative expenses of a debtor's case are not to be charged against his collateral so as not to impair a secured creditor's property right in that collateral. *See In re 680 Fifth Ave. Associates*, 154 B.R. 38, 43 (Bankr. S.D.N.Y.1993). Section 506(c) is an exception to this general rule and allows recovery of administrative expenses from the secured creditor if they are reasonable and necessary in preserving or disposing of the secured creditor's collateral, and the se-

cured creditor benefits directly from the expenditure. *See id.* In the alternative, expenses can be charged against a secured creditor if the creditor has consented to paying the expenses, impliedly or expressly. *See In re Beker Indus. Corp.*, 89 B.R. 336, 341 (S.D.N.Y.1988). Therefore, Omni's right to payment under § 506(c) is a question of fact: whether the secured creditors benefitted directly from Omni's provision of the Premises or whether the secured creditors consented to the rent expense.

■■■■ The Bankruptcy Court did not reach this issue in its Decision below. *See Pudgie's II.* As the reviewing court, we may not decide factual issues not addressed by the Bankruptcy Court. *See In the Matter of Robert John Love*, 957 F.2d 1350, 1361 (7th Cir.1992). However, even if we did reach the issue of whether to charge the secured creditors for Omni's accrued unpaid rent, this Court would conclude that Omni is not entitled to payment under § 506(c).

Appellant cites no authority in this Circuit, and this Court has found none, that supports charging the awards of secured creditors for accrued unpaid rent in this case. *Cf. In re Sports Info. Data Base, Inc.*, 64 B.R. 824, 827 (Bankr.S.D.N.Y. 1986) (denying lessor's § 506(c) claim for unpaid rent because the primary benefit of the Trustee staying on the premises was to the bankruptcy estate, not to the secured creditors). The only case in this Circuit in which a landlord was awarded accrued unpaid rent by charging secured creditors is *National Bank of North Am. v. Isaac Cohen Clothing Corp. (In re Isaac Cohen Clothing Corp.)*, 39 B.R. 199, 200 (Bankr. S.D.N.Y.1984). This case is distinguishable because in *In re Isaac Cohen Clothing Corp.* all of the secured creditors' collateral was tangible property being stored in the premises rented from the lessor, so the

---

5. Section 506(c) states in relevant part:
   The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

698

secured creditors received a direct benefit (storage of their collateral) from the lessor's provision of the premises. Here, the Premises were the Debtors' headquarters, but did not contain all of the secured creditors' collateral and did not provide the secured creditors with any direct benefit.

▆▆ In addition, secured creditors Turk, DiCarlo, and Zisselman did not consent to the imposition of the administrative expense of rent. It is undisputed that these creditors did not expressly consent. Further, they did not impliedly consent because they in no way caused the expense. *See In re Beker Indus.*, 89 B.R. at 343. Implied consent is "not to be lightly inferred." *General Electric Corp. v. Levin & Weintraub (In re Flagstaff Foodservice)*, 739 F.2d 73, 77 (2d Cir.1984).

Omni's administrative claim for accrued unpaid rent under its Lease with Debtors is not entitled to superpriority. If this Court were to reach Omni's § 506(c) claim, we would find that the provision of the Premises was not a necessary and reasonable cost of preserving the secured creditors' collateral.

## CONCLUSION

For the foregoing reasons, this Court affirms the decision of the Bankruptcy Court denying Omni's claim for the proceeds of the sale of the Debtors' assets.

**SO ORDERED.**