**In re LPM CORPORATION, a California Corporation, dba La Jolla Patio & Mattress, Debtor.**

No. 00–00742–A7.

United States Bankruptcy Court, S.D. California.

Sept. 29, 2000.

L. Scott Keehn, Robbins & Keehn, San Diego CA, for debtor.

George B. Blackmar, Jennifer C. Kurlan, Blackmar Principe & Schmelter, San Diego CA, for creditor.

Gerald H. Davis, Coronado CA, trustee.

Gary B. Rudolph, Sparber Ferguson Ponder & Ryan, San Diego CA, for trustee.

## MEMORANDUM DECISION

LOUISE DECARL ADLER, Chief Judge.

## I.

### INTRODUCTION

Kir Temecula L.P. ("Kir Temecula") moves for an order directing North County Bank to release $33,529.08 in funds to satisfy the levy on its writ of execution. The funds are in the former debtor in possession account of LPM Corporation, dba La Jolla Patio & Mattress ("Debtor"). Kir Temecula levied this account to collect the remaining amounts owed under its order compelling payment of rent. The Debtor converted the case to one under chapter 7 before the levy was completed.

Kir Temecula contends it can enforce the levy because the automatic stay was lifted in the chapter 11 case. The conversion did not reimpose the stay; nor did it operate to invalidate the order which required immediate payment. Further, Kir Temecula argues the Debtor paid some of its landlords but not others in violation of § 365(d)(3).[1] The Debtor cannot choose whom to pay, and cannot defy the order compelling payment when it had the funds to comply.

The chapter 7 trustee ("Trustee") opposes the motion because the estate is administratively insolvent. Given this changed circumstance, he contends immediate payment would grant Kir Temecula an improper superpriority in violation of § 726(b). This section mandates the chapter 7 administrative creditors must be paid before the chapter 11 administrative creditors. He contends Kir Temecula should be paid *pro rata* with the other unpaid chapter 11 administrative creditors to the extent any funds remain.

---

1. Hereinafter, all section references refer to title 11 of the United States Code ("Bankrupt- cy Code") unless otherwise specified.

Additionally, the Trustee does not believe the order was defied. He requests judicial notice of the Debtor's motion for partial relief from the order due to the estate's unanticipated insolvency. He believes that motion had substantial merit, but was mooted by the conversion. Having had the opportunity to review the case law and having duly considered the arguments made in the pleadings, the Court denies Kir Temecula's motion.

## II.

## FACTUAL BACKGROUND

The Debtor filed a chapter 11 petition on January 26, 2000. At that time, the Debtor operated approximately forty La Jolla Patio & Mattress retail stores throughout Southern California. During the first sixty days, the Debtor remained current on only a few of its leases notwithstanding the statutory mandate of § 365(d)(3). Kir Temecula is one of the landlords who was not paid.

On March 20, 2000, Kir Temecula moved for an order compelling timely payment of postpetition rent or rejection and immediate surrender of the premises ("Surrender Motion"). The Debtor did not file opposition to the Surrender Motion because it intended to reject the lease. Accordingly, the motion was granted as unopposed.

On May 9, 2000, the Court entered its order granting the Surrender Motion. The order (hereinafter "Surrender Order") deemed the lease rejected as of April 30, 2000 and compelled immediate surrender of possession. Further, it ordered the Debtor to pay Kir Temecula $43,529.08 within two weeks of entry of the order. The order does not provide a remedy in the event of noncompliance.[2]

2. Kir Temecula's Exh. 1.

3. The Declaration of Richard M. Kipperman filed in support of the Motion for Partial Relief from Order sets forth the Debtor's cash and the unpaid administrative expenses as of May 25, 2000. He concludes that, due to unanticipated administrative expenses, the estate may have insufficient cash to pay admin-

On May 25, 2000, the Debtor made a partial payment of $10,000. The next day, the Debtor filed a motion for partial relief from the Surrender Order (hereinafter "Motion for Partial Relief from Order") which was set for hearing July 6, 2000. The motion sought relief under Federal Rule of Civil Procedure 60(b)(1) based upon mistake, inadvertence and excusable neglect. Specifically, the Debtor claimed it should be relieved from the order due to the changed circumstance of the Debtor learning it may be administratively insolvent. The Debtor claimed it did not know of this circumstance when it elected not to file opposition to the Surrender Motion.[3]

Kir Temecula waited the two weeks required by the Surrender Order, and when the Debtor failed to pay the ordered amount, obtained a writ of execution from the Clerk of this Court. Thereafter, it caused a notice of levy to be served on North County Bank and Robbins & Keehn APC, Debtor's counsel. The Debtor converted the case to one under chapter 7 before the levy was completed.[4] As a result of the conversion, the Motion for Partial Relief from Order was taken off calendar. North County Bank has frozen the account pending a ruling on this motion.

## III.

## ISSUES PRESENTED

1. Whether the automatic stay precluded Kir Temecula from levying the Debtor's bank accounts.

2. Whether immediate payment would grant Kir Temecula superpriority over chapter 7 administrative creditors in violation of § 726(b).

istrative creditors in full. Accordingly, he could only pay Kir Temecula $10,000 without crippling the estate's ability to operate. [Kipperman Decl. filed May 26, 2000 at ¶¶ 7–10].

4. Declaration of George B. Blackmar filed July 21, 2000 at ¶¶ 8–9.

3. Whether the Surrender Order entitles Kir Temecula to superpriority over other unpaid chapter 11 administrative creditors.

## IV.

## LEGAL ANALYSIS

### A. *The Automatic Stay Precluded the Levy.*

Kir Temecula argues it was free to levy the Debtor's bank account because the conversion did not reimpose the automatic stay. It cites *In re State Airlines, Inc.,* 873 F.2d 264, 268 (11th Cir.1989), for the proposition that conversion does not reimpose the automatic stay. The appellants in *State Airlines* sought and received an order lifting the stay in the chapter 11 case. 873 F.2d at 265. Having already received an order, the court of appeals held no additional stay relief was necessary because conversion did not reimpose the automatic stay. *Id.* at 268.

■■■ In the present case, Kir Temecula incorrectly assumes it had an order lifting the stay in the chapter 11 case. The Surrender Order nowhere purports to lift the automatic stay. Rather, the stay was lifted only to the extent provided in § 362(c). This section provides the stay ends when the property is no longer in the estate, or the earliest of the time the case is closed or dismissed. *In re Pintlar Corp.,* 124 F.3d 1310, 1313 (9th Cir.1997). Thus, in this case, the Surrender Order caused the stay to be lifted to permit recovery of the surrendered premises because they were no longer in the estate. But it did not lift the stay to permit seizure of the other property that remained in the estate. The Debtor's bank account undisputedly remained in the estate. Therefore, the automatic stay continued to protect this account.

At the hearing, Kir Temecula argued Federal Rule of Bankruptcy Procedure 9014, which incorporates Federal Rule of Bankruptcy Procedure 7069 and Federal Rule of Civil Procedure 69, permits enforcement of the Surrender Order notwithstanding the automatic stay. These rules collectively provide that an order in a contested matter is enforceable by writ of execution, unless the court directs otherwise. Because the Court did not direct otherwise, Kir Temecula contends it acted within the law in obtaining a writ of execution.

■■■ This Court agrees Kir Temecula can obtain a writ of execution, but this procedural rule does not authorize Kir Temecula to levy on property protected by the automatic stay. Such an interpretation would create a conflict between the Bankruptcy Rules and the Bankruptcy Code. Where there is a conflict between the Bankruptcy Rules and the Bankruptcy Code, the Bankruptcy Code controls. *In re Greene,* 223 F.3d 1064, 2000 WL 958885, *5 (9th Cir. July 12, 2000); *In re Pioneer Finance Corp.,* 246 B.R. 626, 633 (Bkrtcy. D.Nev.2000). Accordingly, Kir Temecula is not entitled to the funds in the bank account because its levy violated the automatic stay.

### B. *Kir Temecula Is Not Entitled To Priority Over Chapter 7 Administrative Expenses.*

■■ Kir Temecula would likely be satisfied with an order directing immediate payment from any of the estate's assets. Because there may be insufficient assets to fully pay chapter 7 administrative creditors, this would give Kir Temecula superpriority over the chapter 7 administrative creditors even though § 726(b) mandates the chapter 7 administrative creditors must be paid first. Kir Temecula contends § 365(d)(3) affords the landlord superpriority where it promptly obtains a court order enforcing its rights under this section.

The case law is split on this issue, and there is no controlling Ninth Circuit au-

thority.[5] The majority of courts hold the landlord is entitled to immediate payment except when it appears the estate is administratively insolvent. *See In re Microvideo Learning Systems, Inc.,* 232 B.R. 602, 605–06 (Bankr.S.D.N.Y.1999) (siding with the "vast majority" of courts that adopt the majority view); *In re J.T. Rapps, Inc.,* 225 B.R. 257, 261 (Bankr. D.Mass.1998) (summarizing the competing views and adopting the majority view); *In re The Tandem Group, Inc.,* 61 B.R. 738, 741–42 (Bankr.C.D.Cal.1986) (holding the landlord is not entitled to superpriority). These courts reason the language of § 365(d)(3) requires payment of the rent at the contract rate as it comes due. However, it does not provide the remedy for nonpayment is superpriority. Where the estate is administratively insolvent, immediate payment of the unpaid rent conflicts with § 726(b). It would improperly grant the landlord a *de facto* superpriority where none was explicitly provided in the statute. *Microvideo,* 232 B.R. at 607–08; *J.T. Rapps,* 225 B.R. at 263–64. As *J.T. Rapps* explained:

> In at least three sections of the Bankruptcy Code, Congress explicitly provides a claim with blanket priority over another class of claims. Section 726(b) provides such priority to Chapter 7 administrative claims over Chapter 11 administrative claims. Section 364(c)(1) allows the court to afford superpriority status to postpetition borrowings when the debtor is unable to obtain unsecured credit. And section 507(b) claims receive superpriority status when adequate protection under § 361 fails. [Citations omitted] Congress clearly understood how to provide superpriority status for claims it sought to prefer. "In absence of such Congressional di-

rection with regard to section 365(d)(3) claimants 'it would be inappropriate to imply the existence of an automatic superpriority status.'" [Citations omitted]

*Id.* at 263.

The *J.T. Rapps* court recognized a landlord is not without a remedy. The landlord may: (i) file a motion compelling payment of the rent; (ii) move for an order to immediately surrender the premises; (iii) file a motion for relief from stay to have the estate representative evicted from the premises; or (iv) move for an order to convert the case to one under chapter 7. *Id.* However, there is no evidence Congress intended the remedy of superpriority at the expense of those not responsible for the offense. *Id.* at 264.

Kir Temecula contends it exercised its remedy by obtaining an order compelling payment of the rent. Therefore, the Court should follow the minority view in this case. The minority view treats the rent as an operational expense and affords the landlord superpriority if the landlord acts promptly. *In re Pudgie's Dev. of N.Y.,* 223 B.R. 421, 427 (Bankr.S.D.N.Y.1998) ("*Pudgie's II*"), *aff'd* 239 B.R. 688 (S.D.N.Y.1999) ("*Pudgie's III*")[6]; *compare In re Brennick,* 178 B.R. 305, 307–08 (Bankr.D.Mass.1995) (granting superpriority without addressing the requirement of prompt action).

In *Pudgie's III*, the district court recognized it was improper to grant the landlord superpriority over the chapter 7 administrative expenses. 239 B.R. at 695. Accordingly, it indicated the landlord cannot sit back and allow its claim to accrue. *Id.* at 695. The landlord must promptly enforce the debtor's § 365(d)(3) obligations to be entitled to immediate payment. *Id.*

---

**5.** In *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401, 405 (9th Cir.1994), the Ninth Circuit Court of Appeals ordered immediate payment of the rent at the contract rate as an administrative expense, but specifically stated it expressed no opinion as to whether this administrative expense was entitled to superpriority.

**6.** Kir Temecula cited *Pudgie's II* in its pleadings. However, *Pudgie's II* is better understood in conjunction with *Pudgie's III* which explains the factual basis for the ruling.

Because the landlord allowed its claim to accrue for seventeen months, it was not entitled to an order directing immediate payment. *Id.* at 697.

In contrast, the *Brennick* court utilized § 105(a) to grant the landlord the remedy of superpriority. The court recognized § 365(d)(3) requires "timely" payment of the rent, but does not provide a remedy in the event of nonpayment. 178 B.R. at 307–08. It reasoned use of § 105(a) was appropriate to further the statutory mandate that the landlord must be "timely" paid. *Id.* at 308. The *Brennick* court did not address the propriety of using § 105(a) to override § 726(b). Further, it did not specify the landlord must act promptly.[7]

The Court declines to follow the minority view in this case. The Court will not imply superpriority over chapter 7 administrative creditors where § 365(d)(3) does not provide this remedy. Such a result ignores the mandated priority of § 726(b), and it unfairly harms others who are not responsible for the offense. No professional would agree to serve in the chapter 7 case if a chapter 11 administrative creditor could sweep up the remaining assets of the estate.

Moreover, even under *Pudgie's III,* Kir Temecula is not entitled to immediate payment of its accrued claim. Kir Temecula promptly enforced the Debtor's § 365(d)(3) obligations, but a claim of $33,529.08 has accrued. *Pudgie's III* recognized the court can enforce the debtor's § 365(d)(3) obligations, but it cannot reorder the priorities once a "claim" has accrued. 239 B.R. at 695.[8]

### C. *Kir Temecula Is Not Entitled To Priority Over Chapter 11 Administrative Expenses.*

Additionally, the Court declines to award Kir Temecula priority over the un-

paid chapter 11 administrative expenses. As more fully explained above, § 365(d)(3) is devoid of any grant of superpriority and it is inappropriate to imply such a remedy simply because Kir Temecula acted promptly.

Kir Temecula argues that another case decided in this district took a different position. Specifically, *In re Leisure Time Sports, Inc.,* 189 B.R. 511 (Bankr.S.D.Cal. 1995), held administrative rents paid under § 365(d)(3) are entitled to superpriority status. [Surreply at 3 n. 2] This overstates the holding of *Leisure Time Sports.* In that case, the court addressed the issue of disgorgement of rents that were already paid. It held a landlord cannot be compelled to disgorge properly paid § 365(d)(3) rent payments when a case subsequently proves to be administratively insolvent. *Leisure Time Sports,* 189 B.R. at 513. Although the court did indicate the landlord is entitled to superpriority, it said this in the context of disgorgement which is very different than the situation in this case. Accordingly, *Leisure Time Sports* does not conflict with the holding of this case.

Finally, the Court recognizes Kir Temecula would have been paid had the Debtor complied with the deadline in the Surrender Order. While the Court is not pleased with the Debtor's noncompliance, it did attempt to seek relief from this order due to changed circumstances and risked the possibility of being cited for contempt had such a motion been made. Kir Temecula's own cited case recognized the remedy for nonpayment is a motion for contempt. *See Pudgie's II,* 223 B.R. at 427. Alternatively, Kir Temecula should have sought an order lifting the stay to permit it to levy the Debtor's assets if this was the route it chose to take.

---

7. The landlord was only owed $4,960.50 after thirteen months. Accordingly, prompt action may not have been an issue.

8. Kir Temecula urges only the ministerial act of completing the levy remained. This is in-

correct because the levy is void. *See In re Gruntz,* 202 F.3d 1074, 1082 (9th Cir.2000) (confirming that acts taken in violation of the automatic stay are void).

## IV.

## CONCLUSION

Kir Temecula's motion is denied. Kir Temecula is not entitled to turnover of the funds in the bank account; nor is it entitled to immediate payment from any of the estate's other assets. Kir Temecula's claim is not entitled to superpriority notwithstanding the portion of the Surrender Order that directed immediate payment. Its claim shall be paid *pro rata* with the other unpaid chapter 11 administrative claims to the extent that any assets remain. This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for the Trustee shall prepare and lodge a separate order in accordance with this memorandum decision within ten days of the date of entry.