**In re PIONEER FINANCE CORP., a Nevada Corporation, Debtor.**

**In re Pioneer Hotel, Inc., a Nevada Corporation, Debtor.**

**Bankruptcy Nos. BK–S–99–11404– LBR, BK–S–99–12854–LBR.**

United States Bankruptcy Court, D. Nevada.

Jan. 21, 2000.

SUPPLEMENTAL MEMORANDUM TO ORDER DENYING MOTION TO APPROVE PRE–PETITION SOLICITATION PURSUANT TO FED.R.BANKR.P. 3018(b) AND IN CONJUNCTION THEREWITH FOR APPROVAL OF DEBTORS' (PROPOSED) SECOND AMENDED PLAN OF REORGANIZATION AS BEING IN SUBSTANTIAL COMPLIANCE WITH THE OFFERING [1]

### Overview

LINDA B. RIEGLE, Bankruptcy Judge.

A Chapter 11 debtor seeks confirmation of a proposed plan of reorganization pursuant to a prepetition offering made to record bondholders. In conjunction with its motion, the debtor seeks a determination that its offering qualifies as a valid prepetition solicitation under 11 U.S.C. § 1126(b), and a finding that the consents of the

---

1. This Memorandum supplements the oral findings of fact and conclusions of law as announced at the hearing of this matter. The announced disposition is unchanged. The original Order (which incorporated those findings and conclusions) was entered on October 20, 1999.

record bondholders to the offering are binding obligations to support and vote for its proposed plan. The prepetition offering was in the form of a combined exchange offer and consent solicitation. The offering proposed to exchange new bonds for old bonds or, in the alternative, sought consent of the bondholders to (among other things) vote in favor of a plan of reorganization that complied with the terms of the offering. The offering was sent only to the record holders of the bonds. It was not sent to the beneficial holders.

The Court holds that under the wording of the offering, the bondholders consented only to agree to vote on a plan in the *future*, they did not vote on a present plan. The consents obtained are thus not sufficient to constitute acceptances of the plan which is now proposed. The Court further holds that for the purposes of confirmation of a plan under the Bankruptcy Code, there is insufficient notice and authority to constitute valid acceptances where, as here, a prepetition solicitation was sent only to record bondholders, but not to the beneficial bondholders, and no showing has been made that the record holders had the authority to vote on behalf of the beneficial holders.

### Factual Summary

Pioneer Finance Corp. is a debtor-in-possession in the jointly administered Chapter 11 cases of Pioneer Finance Corp. ("PFC") and Pioneer Hotel Inc. ("PHI") (collectively the "Debtors").

PFC is a single purpose entity created to finance Santa Fe Gaming Corp.'s acquisition of the Pioneer Hotel, which is located in Laughlin, Nevada. PFC's sole asset is a Note and Deed of Trust on the assets of PHI. On December 1, 1988, PFC issued $120 million in "13.5% First Mortgage Bonds due December 1, 1998" (the "1988 Bonds"). PFC is the obligor on the 1988 Bonds. Santa Fe Gaming Corp. ("SFGC"), the parent of PHI and PFC, is the guarantor of PFC's obligations on the 1988 Bonds.

The 1988 Bonds were issued in accordance with an Indenture by and between PFC as issuer, Sahara Casino Partners, L.P. (predecessor-in-interest to SFGC) as guarantor, and Security Pacific National Bank, predecessor to IBJ Whitehall Bank & Trust Company ("IBJ") as indenture trustee (the "Indenture Trustee").

The 1988 Bonds and the PHI Note and Deed of Trust matured and came due on December 1, 1998. On that date, PHI did not make the principal and interest payments due at maturity of the PHI Note and Deed of Trust. In addition, PFC defaulted on its obligations on the 1988 Bonds and SFGC defaulted on its obligations on the guaranty.

### The Offering

Prior to the defaults which occurred on December 1, 1998, SFGC, PHI and PFC began negotiating with Foothill Capital Corp. ("Foothill") to restructure the bond obligation. Foothill then held approximately 26.50% of the face amounts of the outstanding 1988 Bonds.

After the negotiations, PFC issued an "Offer To Exchange All Outstanding 13½% First Mortgage Bonds Due December 1, 1998 ($60,000,000 Principal Amount Outstanding) For 13½% First Mortgage Notes Due 2006 and Consent Solicitation Statement" ("Exchange Offer and Consent Solicitation").

The Exchange Offer and Consent Solicitation was dated October 23, 1998. It was supplemented by an "Amended Offer To Exchange" which was dated November 14, 1998. (Both are collectively referred to as the "Offering").

The Offering proposed two alternatives. On the one hand it proposed to exchange the 1988 Bonds for new bonds with a later maturity date secured by a pledge of certain assets by the guarantor if 100% of the bondholders agreed and tendered their 1988 Bonds to PFC (the "Exchange Offer").

Alternatively, if less than 100% of bondholders agreed, PFC simultaneously

sought the consent ("Consents") of holders of no less than $42,000,000 principal amount of the 1988 Bonds[2] to, among other things: (1) forbear until December 15, 2000 against exercising any rights against PFC or SFGC in the event of PFC's default on the 1988 Bonds; (2) forbear until December 15, 2000 against exercising any rights in the event of PHI's default on the PHI Note; (3) "consent to and support a plan of reorganization" under Chapter 11 of the Bankruptcy Code which substantially complied with the Offering ("Consent Solicitation"). If the requisite consents were received, the Debtors agreed to repurchase from the Consenting Bondholders up to $6.5 million principal amount of the 1988 Bonds together with accrued interest. Upon receipt of the Consents, SFGC would pledge the common stock of certain of its affiliates for its guaranty.

The Offering was mailed to the registered holders of the 1988 Bonds ("Record Holders") utilizing the lists maintained by IBJ, who served as the exchange and solicitation agent for the Offering. IBJ maintained a list of Record Holders in its capacity as the Indenture Trustee. An information agent, D.F. King & Co., was hired to facilitate the dissemination of the Offering. The Debtors acknowledge that the Offering was transmitted "to the only parties known to them, the record owners of the 1998 Bonds."[3] Each Record Holder was also mailed, among other documents, a form upon which to register its consent to the Offering ("Consent Form").

The Offering expired on November 24, 1998. Less than 100% of the bondholders agreed to the Exchange Offer alternative. Holders of $45,816,750 in principal amount of 1988 Bonds (approximately 76.4% of the of the outstanding bonds), however, did agree to the Consent Solicitation ("Consenting Bondholders"). Upon this acceptance, Consenting Bondholders received payments on account of the repurchase and SFGC caused the pledge of the assets.

PFC filed its Chapter 11 petition on February 23, 1999. PHI filed a Chapter 11 petition on April 12, 1999. PFC and PHI filed their first joint disclosure statement and their first plan on April 12, 1999. They filed a revised disclosure statement on June 4, 1999, which was approved on August 30, 1999. The Debtors filed their proposed "Second Amended Plan of Reorganization" in conjunction with the instant "Motion To Approve Prepetition Solicitation" ("Motion to Approve") on August 13, 1999.

In support of their revised disclosure statement, the Debtors at first argued that the Consent Solicitation was a pre-negotiated plan, not a pre-packaged plan.[4] They argued that the Consent Solicitation did not have to comply with the notice provisions of the Bankruptcy Code because it was not a prepetition plan solicitation.

Now, in support of their Motion to Approve, the Debtors argue that the Consent Solicitation *does* qualify as a prepetition solicitation under § 1126(b) and Bankruptcy Rule 3018(b), and that the Consents are votes in favor of the Second Amended Plan. They further contend that the disclosure requirements of § 1125(a) do not apply because, under § 1126(b)(1), they have complied with applicable nonbankruptcy law governing the adequacy of disclosure.

## Legal Analysis

### Prepackaged Reorganizations

In a conventional Chapter 11 case, the debtor files a bankruptcy petition, then negotiates a reorganization plan and soli-

---

**2.** The original Exchange Offer and Consent Solicitation dated October 23, 1998 required the consents of $47,000,000 principal amount of the 1988 Bonds. The Amended Offer To Exchange required a lesser amount ($42,000,-000).

**3.** Debtors' "Pre–Trial Brief," p. 16:10–11 (Docket # 273, filed September 7, 1999).

**4.** "Reply to Objections of Creditor Hudson Bay Partners, LP to the Revised Disclosure Statement Dated June 3, 1999," p. 8:3–24. (Docket # 235, filed August 3, 1999).

cits votes after a disclosure statement has been approved.

■ With a "prepackaged" plan, however, which is authorized under 11 U.S.C. § 1126(b), a plan proponent has negotiated a plan and solicited votes prior to the filing of a Chapter 11 petition and before there is a hearing to determine the adequacy of the disclosure. With prepackaged plans, the adequacy of the disclosure is evaluated under "applicable nonbankruptcy law, rule or regulation" or, if there is none, under the "adequate information" standard set forth in § 1125(a)(1).[5] In a "prenegotiated" plan, the details of a plan are negotiated prior to the filing of the petition. Solicitation, however, does not occur until after the filing.

■ Regardless of whether a plan is prepackaged or "prenegotiated," it must comply with the provisions of the Bankruptcy Code. *See, e.g., City of Colorado Springs Spring Creek Gen. Improvement Dist.,* 177 B.R. 684, 691 (Bankr.D.Colo. 1995)(court must scrutinize prepetition solicitation process to assure "all creditors affected by the plan were accorded the basic elements of due process.").

11 U.S.C. § 1126 governs the acceptance and rejection of Chapter 11 reorganization plans, whether acceptance occurs before or after the commencement of the case. The adequacy of the Debtors' prepetition solicitation process is thus measured by this section, particularly § 1126(b), which concerns acceptance of a plan before the commencement of case, and § 1126(c), which defines "acceptance" of a plan. § 1126 provides, in its entirety:

§ 1126. Acceptance of plan

(a) The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan. If the United States is a creditor or equity security holder, the Secretary of the Treasury may accept or reject the plan on behalf of the United States.

(b) For the purposes of subsections (c) and (d) of this section, a holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—

(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or

(2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(e) On request of a party in interest, and after notice and a hearing, the court

---

**5.** 11 U.S.C. § 1125(a) provides that "adequate information" means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan...."

may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

(f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

### Adequacy of the Debtors' Solicitation Process

#### A. The Consents Do Not Constitute Acceptance of the Second Amended Plan

█ Pursuant to 11 U.S.C. § 1126(a) the "holder of a claim or interest" is entitled to accept or reject a plan. 11 U.S.C. § 1126(c) states that "acceptance" occurs when "such plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-half in number of the allowed claims...." Under § 1126(b), the holder of a claim or interest that has accepted or rejected "the plan" prepetition is deemed to have done so if the solicitation was in compliance with any applicable nonbankruptcy law or, if there is no such law, there was disclosure of "adequate information" under § 1125(a).

In the instant case there has been no acceptance of "the plan" under § 1126(b). Instead, under the language of the relevant documents, there has merely been an agreement to consent to some plan *in the future.* The Consenting Bondholders merely *agreed* to *agree* on a plan.[6]

### The Consent Form

Under the language of the Consent Form, a Consenting Bondholder merely *agreed* to *agree* on a future plan. The Consent Form stated the following, in pertinent part:

Part II—Consents

(To be completed by Holders who wish to consent to the Proposed Consents)

The undersigned is a Holder ... of the [1988 Bonds]. As a Holder of such [1988 Bonds], *the undersigned hereby:*

Consents    Does Not Consent

to the following in the event the Exchange Offer is not consummated (the "Proposed Consents"):

— — — — —

3.   *To consent to and support a plan of reorganization under Chapter 11 of the United States Bankruptcy Code* which provides for treatment of the [1988 Bonds] in a bankruptcy case under Chapter 11 of the Bankruptcy Code that is substantially similar to the treatment of the [1988 Bonds] offered in the Exchange (the "Plan"). Such support shall include, without limitation, (i) voting to accept the Plan and making reasonable efforts to obtain confirmation of the Plan, even if the Plan involves a "cramdown" under Section 1129(b) of the Bankruptcy Code of classes of claims or equity interests other than the class that includes the [1988 Bonds], (ii) not agreeing to, consenting to or voting for any plan that contains terms inconsistent with the Plan and (iii) not objecting to or otherwise commencing any proceeding to oppose or alter the Plan or making any action that is inconsistent with, or that would delay solicitation, confirma-

---

6.   The Court does not determine whether such "agreement" constitutes a contract or what

remedies are available, if any, for a failure to vote in favor of the plan.

tion, effectiveness or substantial consummation of the Plan.

(Emphasis added).

### The Exchange Offer and Consent Solicitation

The language of the Exchange Offer and Consent Solicitation also shows that the Consenting Bondholders merely *agreed* to *agree* on a future plan. That document states the following, at page 25:

> Concurrently with the Exchange Offer, [PFC] is seeking the Consents so that if the Minimum Condition or any other condition to the Exchange Offer is not satisfied and the Exchange Offer is not consummated, [PFC] will have the Consents of certain holders of [1988 Bonds] pursuant to which, among other things, the consenting Holders *agree to . . . vote to accept a plan of reorganization which provides for treatment of the [1988 Bonds] in a bankruptcy case under Chapter 11 of the Bankruptcy Code that is substantially similar to the treatment of the [1988 Bonds] offered in the Exchange (the "Plan").*

(Emphasis added).

### The Amended Offer To Exchange

Similarly, the wording of the Amended Offer To Exchange is such that a Consenting Bondholder merely *agreed* to *agree* on a plan, and agreed to vote to accept *some plan in the future.* The Amended Offer To Exchange states the following, at page 11:

> [PFC] is soliciting the consents (the "Consents") of the Holders to the following (the "Proposed Consents"), which will be effective only if the Exchange Offer is not consummated and valid consents are properly furnished by the Solicitation Expiration Date with respect to at least $42 million principal amount of [1988 Bonds]:

> *To consent to and support a plan of reorganization* under Chapter 11 of the Bankruptcy Code which provides for treatment of the [1988 Bonds] in a bankruptcy case under Chapter 11 of the Bankruptcy Code that is substantially similar to the treatment of the [1988 Bonds] offered in the Exchange; provided that (1) the additional Event of Default described under "Modifications to the Exchange Offer and Terms of the New Notes to be Issued in the Exchange Offer" will occur if the events contemplated by paragraphs (a) or (b) thereof have not occurred by the later of December 31, 1999 or six months after the date of a plan of reorganization is confirmed in a Chapter 11 case and (2) the Excess Cash Redemption obligation will commence on the first June 30 or December 31 following the date on which a plan of reorganization is confirmed (the "Plan"). Such support shall include, without limitation, (i) voting to accept the Plan and making reasonable efforts to obtain confirmation of the Plan, even if the Plan involves a "cramdown" under Section 1129(b) of the Bankruptcy Code of classes of claims, including the class that includes the [1988 Bonds] or equity interests, (ii) not agreeing to, consenting to, recommending or voting for any plan that contains terms inconsistent with the Plan, and (iii) not objecting to or otherwise commencing any proceeding to oppose or alter the Plan or taking any action that is inconsistent with, or that would delay solicitation, confirmation, effectiveness or substantial consummation of the Plan. . . .

(Emphasis added).

While it may be argued that the terms of the proposed Second Amended Plan substantially conform to the Offering,[7] the Offering sought only the consent of Record

---

7. The Court makes no decision in this regard. Such a determination is unnecessary given the ruling herein.

Holders to a *future plan.* The Consents do not constitute acceptance of "the plan" under § 1126(b). Indeed, the Debtors themselves have acknowledged that they did not present a plan or disclosure statement to the 1988 bondholders prepetition, and that "1988 Bondholders were not asked to vote on a specific plan, only to agree to support and vote for a plan embodying the Consent Solicitation."[8]

■ Even if the Consents were to a present plan, however, the Offering is inadequate because it was sent only to the Record Holders.

### B. Disclosure To Record Holders v. Beneficial Holders

■ The Bankruptcy Code requires that a creditor receive adequate notice before its claim is impacted. *See In re Consol. Water Util.,* 217 B.R. 588, 590 (9th Cir. BAP 1997)(due process must be complied with before a confirmed plan will bind those who have a claim or interest). In this regard, a prepetition solicitation process must be scrutinized to ensure that substantially all creditors who are affected by the plan receive notice. *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.,* 177 B.R. 684 (Bankr.D.Colo.1995)(prepetition solicitation procedures failed to comply with Rule 3018(b) and violated due process where it was unknown whether all beneficial bondholders had received the plan, disclosure statement and ballot).

In this case, the Offering was sent only to the Record Holders. The Record Holders, however, may or may not be the "holder of the claim" which is based upon the 1988 Bonds.

■ Pursuant to § 1126(a), it is only the "holder of a claim or interest" who is entitled to vote on a plan. Under the Code, a holder of a "claim" is one who has a "right to payment." 11 U.S.C. § 101(5)(A). Plainly, it is the beneficial holder, not a holder of record, who has the "claim" and the "right to payment."

■ Although Fed.R.Bankr.P. 3018 makes reference to the acceptance of a plan by a "holder of record," such language is at odds with § 1126, which provides that it is the "holder of a claim or interest" who may accept or reject a plan. Nowhere does § 1126(b) refer to "record holders." Where a bankruptcy rule affects a substantive change in the Code, the Code must prevail.[9] *See also, In re Southland Corp.,* 124 B.R. 211 (Bankr.N.D.Tex.1991)(Bankruptcy Rule 3018 references to "holder of record" as entity who may accept or reject plan is attempted substantive change in Bankruptcy Code, and does not prevail over identification of "holder of claim" as entity who may accept plan under § 1126(b)).

■ Rule 3018(c) ("Form of Acceptance or Rejection") provides that an acceptance or rejection of a Chapter 11 plan may be made by an "authorized agent."[10] Such authority, however, must be established. Here, there has been no showing

8. "Reply to Objections of Creditor Hudson Bay Partners, LP to the Revised Disclosure Statement Dated June 3, 1999," p. 9:4–6 (Docket # 235, filed August 3, 1999).

9. Under 28 U.S.C. § 2075 (the "Bankruptcy Rules Enabling Act"), the "Supreme Court shall have the power to prescribe by general rules, the form of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right."

10. Fed.R.Bankr.P. 3017(c) provides:

**Form of acceptance or rejection.** An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form. If more than one plan is transmitted pursuant to Rule 3017, an acceptance or rejection may be filed by each creditor or equity security holder for any number of plans transmitted and if acceptances are filed for more than one plan, the creditor or equity security holder may indicate a preference or preferences among the plans so accepted.

that the Beneficial Holders authorized the Record Holders to accept the Consent Solicitation.[11]

In *In re Southland Corp.*, 124 B.R. 211 (Bankr.N.D.Tex.1991) the debtor, relying on Fed.R.Bankr.P. 3018, solicited only the record holders of claims by mailing the solicitation materials to broker dealers, who held the securities in street name. The court required that the votes be re-solicited using procedures designed to identify and obtain the vote of the beneficial holders, because there was no evidence of the authority of the record holders to vote on the plan. The court held that if votes were cast by broker-dealers or other representatives, there had to be certification of the representative's authority to vote. *Id.* at 227. As the *Southland* court stated:

> If the record holder of a debt is not the owner of a claim, or a true creditor, he may not vote validly to accept or reject, unless he is an authorized agent of the creditor, and this authority is established under appropriate bankruptcy law and rules.

*Southland*, 124 B.R. 211, 227 (Bankr. N.D.Tex.1991).

It is true that Section 308 of the Indenture states that the person in whose name the 1988 Bond is registered is treated as the "owner" for all purposes, and that § 101 of the Indenture defines "bondholder" and "holder" as "a person in whose name a bond is registered on the bond register." The Indenture, however, does not control who has the authority to vote for a plan of reorganization under the Bankruptcy Code. While record holders may vote on behalf of beneficial holders outside of bankruptcy under the federal securities laws, under § 1126 of the Bankruptcy Code it is the "holder of a claim or interest" who is entitled to receive a plan solicitation package and to vote. Having made the decision to file bankruptcy in order to restructure a debt which could not otherwise be contractually restructured outside bankruptcy, the Debtors must comply with the provisions of the Bankruptcy Code. There is simply no indication in the Bankruptcy Code or Rules that the notice required during a Chapter 11 solicitation process is superceded by federal securities law practices. This Court is persuaded by Judge Dreher's reasoning in the unpublished opinion *St. Therese Care Center, Inc.*, 1991 WL 217669 (Bankr.D.Minn. Oct. 23, 1991):[12]

11. There was, apparently, a mechanism for the Beneficial Holders to authorize the Record Holders to accept the Consent Solicitation. The Indenture Trustee, in its "Statement of Indenture Trustee Regarding Record of Noteholders and Procedures Relating To Solicitation," at 3:16–19 (Docket # 323, filed September 22, 1999) states that among the documents "which were to be distributed" by the information agent, D.F. King, was a "form letter for Holders to send to the beneficial holders of the [1988 Bonds], along with an accompanying instruction form for obtaining the beneficial holder's instructions with regard to the Exchange Offer and Consent Solicitation." The "Letter To Beneficial Owners" is attached to the Indenture Trustee's "Statement" as "Exhibit E." The "Letter To Beneficial Owners" states that the Beneficial Holder must return an "accompanying instruction form" to authorize the delivery of Consents by the Record Holders.

There has been no showing made as to whether any Beneficial Holders forwarded instructions to the Record Holders, or whether the "Letter To Beneficial Holders" was ever sent.

12. In *In re St. Therese Care Center, Inc.*, 1991 WL 217669 (Bankr.D.Minn. Oct. 23, 1991), a securities broker/dealer was the record holder of a significant number of bonds for its clients, who were creditors in a case involving two competing plans for reorganization. The identity of the beneficial bondholders was not known to the debtor or the other plan proponents. The record holder sought to keep the names of the beneficial holders in confidence, and brought a motion under Fed.R.Bankr.P. 3017(e) that it be the one to whom the disclosure statement, plans, and ballots be submitted.

The court in *St. Therese Care Center, Inc.* held that under § 1126(a) "it is the holder of a claim or interest that may accept or reject a plan" and thus disclosure of the identities of the beneficial bondholders was required to foster full information for the voting process

Although record holders may vote shares pursuant to the instructions of the beneficial owners under the securities laws, that process is designed to facilitate the rapid trading and marketability of securities. The Bankruptcy Code, however, concerns itself with providing full disclosure to creditors so that those creditors can cast their ballots intelligently. The Bankruptcy Code and the federal securities laws are simply different sets of laws with different purposes. There is no suggestion in Rule 3017(e) or the Committee Notes that practices developed under the federal securities laws have binding application to the chapter 11 voting process.

Moreover, Fed.R.Bankr.P. 3017(e) requires that the beneficial holders of bonds, not merely the record holders, must receive the disclosure statement, plan and ballot. Rule 3017(e) provides:

Transmission to Beneficial Holders of Securities. [T]he court shall consider the procedures for transmitting the documents and information required by subdivision (d) of this rule to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate.

The committee notes to Rule 3017(e) state:

Subdivision (e) is designed to ensure that appropriate measures are taken for the plan, disclosure statement, ballot and other materials which are required to be transmitted to creditors and equity security holders under this rule to reach the beneficial holders of securities held in nominee name ... *In most cases, the plan proponent will not know the identities of the beneficial holders and therefore it will be necessary to rely on the nominal holders of the securities to dis-tribute the plan materials to the beneficial holders.*

(Emphasis added). Thus, a pre-petition solicitation process is invalid where there is no evidence that the solicitation has been sent to beneficial bondholders, and no showing has been made that record holders have been authorized by beneficial holders to vote on their behalf, *See City of Colorado Springs Spring Creek Gen. Improvement Dist.,* 177 B.R. 684, 691 (Bankr.D.Colo.1995)(confirmation denied where debtor failed to show that disclosure had been provided to all beneficial holders in a pre-petition solicitation); *In re Southland,* 124 B.R. 211 (Bankr.N.D.Tex. 1991)(court required re-vote in prepackaged Chapter 11 case because it was unclear whether ballots had been cast by beneficial owners or record holders).

The Debtors argue that outside bankruptcy, brokers cannot disclose the names of their customers to third parties, citing SEC Rule 14b–1(c) and 17 CFR § 240.14(b)–1(c). The Court appreciates that there might be obligations outside bankruptcy to keep the identities of beneficial holders confidential. In a bankruptcy proceeding, however, Fed. R. Bankr. 3017(e) provides a bankruptcy court wide latitude to fashion procedures to protect the confidentiality of the beneficial bondholders. Rule 3017(e) empowers a bankruptcy court to "determine the adequacy of the procedures" for transmitting disclosure to beneficial holders and to "enter any orders the court deems appropriate." While such procedures will most likely vary according to the specific facts of a case, they might include requiring affidavits from record holders who attest that a solicitation was transmitted to the beneficial holders. Alternatively, a consent form could contain a place where a beneficial bondholder could indicate that he or she has seen the solicitation and either does or

---

so that ballots could be cast by them or their authorized agents. The two plan proponents, therefore, were entitled to the names and phone numbers of the beneficial holders. The court further held, however, that the solicita-

tion process should be carefully tailored to avoid the release of names of those investors who wished to remain confidential, and to restrict the use of, and access to, the list of bondholders.

does not authorize the record holder to vote in its behalf.

Given the Court's holding that there has not been an acceptance of a plan as provided for under § 1126(b), the Court need not reach the Debtors' argument that § 1125(a) does not have to be satisfied because the debtors have complied with "applicable nonbankruptcy law" governing disclosure.

For the reasons set forth above, the motion is hereby denied.